## STATE OF MARYLAND, for use of Markley, *v.* BALD-WIN & Others.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

Argued November 13, 14, 1884.—Decided December 15, 1884.

A suit on an administrator's bond, taken in the name of a State for the benefit of parties interested, is, for the purposes of jurisdiction, to be regarded as a suit in the name of the party for whose benefit it is brought.

Testimony as to admissions and conduct of a deceased person cannot be impeached by proof of that person's statement concerning the character of the witness testifying to them.

If one of the issues at a trial be whether parties cohabiting together in a State in which marriage is a civil contract, to which no attending ceremonies are necessary, were man and wife, it is the duty of the court to direct the jury, in the absence of statutory regulations on the subject, to the necessity of proof of some public recognition of the marriage, by which it can be known, or reputation of the relation may obtain.

A general verdict upon distinct issues raised by several pleas cannot be sustained if there was error as to the admission of evidence, or in the charge of the court, as to any one of the issues.

This was a suit on an administrator's bond taken in the name of the State of Maryland for the benefit of the parties interested. It was commenced in a State court of Maryland, against citizens of Maryland, and was removed to the Circuit Court of the United States on the ground that the real party in interest was a citizen of New Jersey. The facts raising the questions of jurisdiction, and the questions on the merits, are all fully stated in the opinion of the court.

*Mr. Albert Constable* for plaintiff in error.

*Mr. Archibald Sterling, Jr.,* for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This is an action, brought for the use of Markley, a citizen of New Jersey, upon the bond of the administrators of the estate of Daniel Lord, deceased, who died intestate in 1866, in Cecil County, Maryland, of which State he was at the time a

citizen, and in which he owned real and personal property. It was commenced in the Circuit Court of that county. The defendants are citizens of Maryland.

Markley filed his affidavit setting forth his citizenship and that of the defendants, and that he had reason to believe and did believe that, from prejudice and local influence, he would not be able to obtain justice in the State court. The action was thereupon removed to the Circuit Court of the United States for the district. It would appear somewhat singular that a party should aver his inability to obtain justice, from the causes stated, in an action brought for his benefit in the name of the State in one of her own courts, but from the fact that the State is only a formal plaintiff, the actual litigation being between the other parties.

By the law of Maryland the bond of an administrator is taken to the State, but is held for the security of persons interested in the estate of the deceased. The name of the State is used from necessity when a suit on the bond is prosecuted for the benefit of a person thus interested, and, in such cases, the real controversy is between him and the obligors on the bond. If the residence of these parties be in different States, the Circuit Court of the United States has jurisdiction.

A statute of Virginia in force in 1809 required bonds given by executors for the faithful execution of their duties to be made payable to the justices of the peace of the county where letters were issued, but allowed suits to be brought upon them at the instance of any party aggrieved; and in *Browne* v. *Strode*, 5 Cranch, 303, this court held that the Circuit Court of the United States for the district had jurisdiction of an action upon such a bond in the name of the justices of the peace for the use of a British subject, though the defendants were citizens of Virginia, the real controversy being between them and an alien.

A statute of Mississippi in force in 1844 required sheriffs to execute bonds to the governor of the State for the faithful performance of their duties, which could be prosecuted by any party aggrieved, until the whole penalty was recovered. In *McNutt* v. *Bland*, 2 How. 9, an action was brought in the

Circuit Court of the United States for the District of Mississippi in the name of the governor for the use of citizens of New York against defendants who were citizens of Mississippi, and on demurrer it was held that the Circuit Court had jurisdiction, this court observing that there was a controversy and a suit between citizens of New York and citizens of Mississippi, and there was neither between the governor and the defendants, that as an instrument of the State his name was on the bond and to the suit, but in no just view of the Constitution could he be considered as a litigant party. "Both," it added, "look to things not names—to the actors in controversies and suits, not to the mere forms or inactive instruments used in conducting them, in virtue of some positive law." The justices of the peace in the one case and the governor in the other were mere conduits through whom the law afforded a remedy to persons aggrieved, who alone constituted the complaining parties. So in the present case the State is a mere nominal party; she could not prevent the institution of the action, nor control the proceedings or the judgment therein. The case must be treated, so far as the jurisdiction of the Circuit Court of the United States is concerned, as though Markley was alone named as plaintiff; and the action was properly removed to that court.

The declaration, after stating the appointment by the Orphan's Court of Cecil County of two of the defendants as administrators, and the execution of the bond by them as principals, and by the other defendants as sureties, alleges that the administrators took possession of the personal property of the deceased, paid all his debts, and on the 23d of October, 1867, passed their account, showing such payment, and that there was in their hands for distribution the sum of $24,439.43. It also alleges that Markley is a child and heir-at-law of the deceased, and as such entitled to one-fourth part of the personal estate of which he died possessed; that the administrators have not distributed the surplus in their hands as required by law, but have refused to pay him the portion to which he is entitled, although requested so to do, and that thus they have not discharged their duty.

The defendants filed several pleas, in substance as follows:

1st. That Markley was not one of the heirs of the deceased, and therefore not entitled to a distributive share of his estate;

2d. That the administrators had fully administered upon the estate and had no property of the deceased, and had not had since the commencement of the action;

3d. That the personal estate of the deceased was insufficient to satisfy the debts which they had paid;

4th. That before the commencement of the action they had paid to creditors of deceased an amount which, with the expenses of administration, exceeded the value of his whole personal estate which had come into their hands; and

5th. That they had compromised with Markley for his claim against the estate, both real and personal, and paid him $3,500, which he had received in full satisfaction and discharge of his claim.

Upon these pleas issues were joined and tried by the court with a jury, which found a general verdict for the defendants. Judgment having been entered, the case was brought here on writ of error.

On the trial evidence was introduced bearing upon all the issues, and if any one of the pleas was, in the opinion of the jury, sustained, their verdict was properly rendered, but its generality prevents us from perceiving upon which plea they found. If, therefore, upon any one issue error was committed, either in the admission of evidence, or in the charge of the court, the verdict cannot be upheld, for it may be that by that evidence the jury were controlled under the instructions given.

Upon the issue made by the first plea, evidence was introduced to establish a marriage between Markley's mother and the deceased. It showed that her maiden name was Rebecca Markley; that whilst retaining that name, she lived with him, he passing also by the name of Markley; that they had several children; that to her sisters and to one Cross, his son-in-law, he frequently spoke of her as his wife; that he so called her in their presence, and she called him her husband, and to the doctor who attended her during her confinement he spoke of her as his wife. No witness was present at any marriage ceremony,

or at any contract of marriage between the parties; a marriage was inferred from their declarations and their living together. In explanation of his adopting her name of Markley, one of the sisters states that he informed her that he desired to keep his marriage secret from his mother, as she was a Quakeress and hostile to his marriage out of the society to which she belonged. On the other hand, it appeared, from other witnesses, that his being married was never communicated to his family; that neither his brothers, sisters, nor intimate companions and associates ever heard of it; and that his mother was an Episcopalian, and therefore his professed reason for keeping his marriage secret from her was a mere pretence to conceal his actual relations to the woman with whom he was living, whatever they were. Cross testified that the deceased had admitted to him his marriage with Miss Markley, and had given the reason mentioned for concealing his own name and taking hers; also, that the deceased had great confidence in him, and after Rebecca's death had spoken of his marriage and stated that he owed to her all his early success. One of the defendants, called as a witness for the defence, was permitted, against the objection of the plaintiff, to testify to conversations with the deceased about Cross, and that the deceased had expressed great distrust of him, calling him anything but an honest man, and stating that Cross had been in the penitentiary, and that it had cost the deceased $500 to get him out. This testimony was clearly inadmissible; it was mere hearsay. Testimony as to the admissions and conduct of a person cannot be impeached by his statements to a third party as to the character of the witness. The evidence, too, was material. It tended directly to discredit Cross and thus weaken the force of his statements respecting the asserted marriage. It is impossible to say what effect it may have had on the minds of the jury on the question of the marriage.

As the case must, for this error, go back for a new trial, it is proper to say that, by the law of Pennsylvania, where, if at all, the parties were married, a marriage is a civil contract, and may be made *per verba de præsenti*, that is, by words in the present tense, without attending ceremonies, religious or civil. Such is

also the law of many other States in the absence of statutory regulation. It is the doctrine of the common law. But where no such ceremonies are required, and no record is made to attest the marriage, some public recognition of it is necessary as evidence of its existence. The protection of the parties and their children and considerations of public policy require this public recognition; and it may be made in any way which can be seen and known by men, such as living together as man and wife, treating each other and speaking of each other in the presence of third parties as being in that relation, and declaring the relation in documents executed by them whilst living together, such as deeds, wills, and other formal instruments. From such recognition the reputation of being married will obtain among friends, associates, and acquaintances, which is of itself evidence of a persuasive character. Without it the existence of the marriage will always be a matter of uncertainty; and the charge of the court should direct the jury to its necessity in the absence of statutory regulations on the subject. Otherwise the jury would be without any guide in their deliberations.

The law of Pennsylvania, as we are advised, requires, in some form, such recognition. See *Nathan's Case,* 2 Brewster, 149, 153; *Commonwealth* v. *Stump,* 53 Penn. St. 132.

*Judgment reversed and cause remanded for a new trial.*