BRACE, J.
This is an appeal by the defendant from a decree and judgment of the circuit court of Oooper county in favor of the plaintiffs.
At the time the suit was instituted the plaintiffs constituted the Board of Railroad and "Warehouse Commissioners of the State of Missouri. ¡
The petition is as follows:
II. W. Hickman, James Cowgill and Joseph Flory, cqnstituting the Board of Railroad ’ and Warehouse Commissioners of the State of Missouri, plaintiffs, vs. The Missouri, Kansas & Texas Railway Company, Defendant.
“Plaintiffs state that they are the regularly elected, duly qualified and acting Railroad and Warehouse Commissioner’s of the State of Missouri and constitute the board empowered by law to classify and regulate passenger and freight rates in the State of Missouri. That the defendant is a railroad corporation duly incorporated under the laws of the State of Kansas and authorized to do business in the State of Missouri; that said defendant owns and operates a line of railroad in this State, a portion of the main line of which is located in the county of Oooper, State of Missouri, and extends from said county across the Missouri river over a bridge to the county of Howard, in the State of Missouri; that said bridge over which said railroad is constructed is a part of the roadway of the same and is used as such; that said bridge is under the control and management of said defendant; that informal complaints have heretofore been made to plaintiffs as the Board of Railroad and Warehouse Commissioners aforesaid, that arbitrary, illegal and improper charges had been made by said defendant for carrying passengers and freight over that portion of defendant’s said road which passes over said bridge; that plaintiffs, under the authority given them as the *653 Board of Eailroad and Warehouse Commissioners aforesaid, proceeded, on the 16th day of July, 1895, after formal notice had been given to defendant, to examine into 'and determine upon the reasonableness of the charges made by said defendant for carrying freight and passengers over the bridge aforesaid; that it was disclosed by said examination that the defendant was charging more for carrying passengers and freight over said bridge than is authorized by law; that said defendant belongs to the class of railroad corporations designated by the laws of the State of Missouri as “Class A;” that said class is only authorized to charge passengers at the rate of 3 cents per mile each; that said Boonville bridge is not exceeding one mile in length; that said defendant charges for carrying each local passenger over said bridge the sum of three cents per mile; that in addition thereto the said defendant makes an arbitrary charge of 25 cents for carrying each local passenger on its line of -railway over said bridge; that said charge of 25 cents so made, demanded and received of each local passenger by said defendant, is illegal, improper and unauthorized by law'; that said defendant charges and collects on freights transported over said bridge and between local stations upon the line of its railway in addition to the duly established rates for such transportation, as shown in tariffs filed in the office of said Eailroad and Warehouse Commissioners, the sum of five cents per one hundred pounds on freights in lots of less than car loads, and two cents per one hundred pounds of freight in car loads. That said charges so made, demanded and received are excessive, unauthorized and in violation of law.
“That on the 22d day of July, 1895, plaintiffs as the Board of Eailroad and Warehouse Commissioners aforesaid, after having duly considered the complaints heretofore filed against the defendant as aforesaid, found that the same were sustained by proper and sufficient evidence and made and entered of record an order directed to the said defendant *654 railway company that the arbitrary charges made by defendant for crossing passengers and freight over the bridge at Boonville,Missouri, aforesaid, be discontinued, and that a copy of said finding and order was by said plaintiffs forwarded to the general manager of said defendant’s road.
“Plaintiffs state that they are informed and believe the fact to be that the defendant is disregarding and ignoring said order and is continuing in violation of law to charge, demand and -receive rates in excess of three cents per mile for carrying each passenger o-ver that portion of its road which consists of said bridge, and that said defendant continues to charge, demand and receive freight rates in excess of those authorized by law for carrying freight on that portion of its road of which said bridge over the Missouri river at Boon-ville constitutes a part.
“Plaintiffs, therefore, ask that this court may issue a writ of injunction herein o-r such other process, mandatory or otherwise, as may seem necessary in the premises, to restrain said defendant from further continuing to violate the law and the finding of said plaintiffs herein, acting as the Board of Railroad -and Warehouse Commissioners aforesaid, that obedience to said order may be required of defendant and that such other and further orders and decrees may be made in this cause as may seem upon a hearing to be right and proper in the premises.”
In due time the defendant appeared and filed its petition and bond for the removal of the cause to the circuit court of the United States, the petition being as follows:
“Your petitioner respectfully shows that it is the defendant in the above entitled suit; that at and prior to the time of the institution of this suit the defendant was, ever since has been, and now is, a corporation created and existing under the laws of the State of Kansas; and that at said times and dates, it was, has been, and now is, a citizen of the State of Kansas, and non-resident of the State of Missouri, in which *655 this suit is brought; that the plaintiffs in said suit, at the time of the institution thereof, all and each were, ever since have been and now are, citizens and residents of the State of Missouri. That the said suit is of a civil nature to enjoin the collection of certain charges for the transportation of passengers and freight over and across a bridge across the Missouri river, between the counties of Oooper and Howard, in the State of Missouri, and that the amount and matter in dispute in said suit exceeds, exclusive of interest and costs, the sum and value of two thousand dollars. That the controversy in said suit is wholly between citizens of different States, to wit: Between your petitioner, a citizen of the State of Kansas at the time of the bringing of said suit and at this time, and the said plaintiffs, who, each and all of them, were then, and still are, citizens of the State of Missouri, and your petitioner offers herewith a bond, with good and sufficient security, for its entry in the circuit court of the United States for the Central Division of the Western District of Missouri, on the first day of the next regular session or term, of a copy of the record in this suit, and for paying all costs that may be awarded by the circuit court of the United States, if said court shall hold that this suit was wrongfully or improperly removed thereto, and your petitioner prays this honorable court to proceed no farther herein, except to make an order for the removal of this case to said United States circuit court, and to accept the said surety and bond, and to cause the record herein to be removed into the said circuit court of the United States in and for the Central Division of the Western District of Missouri, and it will ever pray.”
At the October term, 1895, of the circuit court of Cooper county the defendant’s petition for removal was denied, and thereupon the defendant procured and filed in the United States circuit court at Jefferson City a transcript of the proceedings in the Oooper circuit court. At the January term, 1896, of the Cooper circuit court the case was continued by *656 the court on its own motion. At the May term, 1897, of the said court, the case was again continued, on application of the plaintiff, to the October term,1897, of said court. At which term, the case, over the protest of the defendant and its-objections to the jurisdictions of said court, was taken up and tried on the evidence of the plaintiffs, without any participation by the defendant in the trial, and the decree rendered as prayed for in their petition, with judgment for costs. After-wards, in due time, the defendant filed its motion for new trial, and in arrest of judgment, which being overruled, it perfected its appeal to this court.
(1) Under the laws of theUnited States, the circuit courts thereof have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law, or in equity, when the matter in dispute exceeds, exclusive of interest, the sum or value of two thousand dollars and in which the controversy is between citizens of different States. [25 U. S. St. at Large, p. 434, sec. 1.] Any such suit pending in a State court “may be removed into the circuit court of the United States for the proper district, by the defendant or defendants therein, being non-residents of that State.” [Ib., sec. 2.]
And by section 3 of said Act it is provided that whenever any party entitled to remove 'any such suit, “may make and file a petition in such suit in such State at the time, or at any time before the defendant is required by the laws of the State or the rules of the State court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff......and shall make and file therewith a bond, with good and sufficient surety, for his or their entering in such circuit court, on the first day of its then next session, a copy of the record in such suit, and for paying all costs that may be awarded by the said circuit court if said court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit *657 if special bail was originally requisite therein. It shall then be the duty of the State court to accept said petition and bond, and proceed no further in such suit.”
It is contended for the defendant, that when the petition and bond for removal was filed in the case, in the Cooper county circuit court, the jurisdiction of that court to take any further proceedings therein except to make an order transferring the case to the circuit court of the United States,, ceased, and that its proceedings thereafter which culminated in the decree aforesaid was coram non judice and void, therefore the decree and judgment should be reversed.
It may be conceded that the petition and bond for removal are in .proper form and that the petition states facts which if true are sufficient to authorize the transfer of the case to the circuit court of the United States under the statute cited, and it may be further conceded that an issue upon the facts stated in the petition could not be raised and tried in the State court for the purposes of determining the question of its jurisdiction. The State court “must take the facts to be as they are stated in the record and the petition; it has no jurisdiction to pass upon any such question; that is the exclusive province of the Federal Court.” [Black’s Dillon on Removal of Causes, sec. 191, and cases, note 30.] The jurisdiction of the State court, however, is not ousted by the mere filing of the petition and bond. “In order to warrant a removal from a court of a State into a circuit court of the United States, according to the terms of the Act, the necessary diverse citizenship must exist.” [Powers v. Chesapeake & Ohio Railway Co., 169 U. S. loc. cit. 99.].
The petition when filed becomes a part of the record and the defendant’s right of removal depends upon the facts as they appear 'from the whole record. [Stone v. South Carolina, 117 U. S. 430.] As was said by ‘Waite, C. J., in that case: “A State court is not bound to surrender its jurisdiction of a suit on a petition for removal until a case has been *658 ma.de which on its face shows that the petitioner has a right to the transfer. [Yulee v. Vose, 99 U. S. 539, 545 ; Removal Cases, 100 U. S. 457, 474.] It is undoubtedly true, as was said in Steamship Company v. Tugman, 106 U. S. 118, 122, that upon the filing of the petition and bond — the suit being removable under the statute — the jurisdiction of the State court absolutely ceases, and that of the circuit court of the United States immediately attaches, but still, as the right of removal is statutory, before a party can avail himself ■of it, he must show upon the record that his is a case which comes within the provision of the statute. As was said in Insurance Company v. Pechner, 95 U. S. 183, 185, Tris petition for removal when filed becomes a part of .the record in the cause. It should state facts which, when taken in connection with such as already appear, entitled him to the transfer. If he fails in this, he has not, in law, shown to the court that it can not “proceed further with the suit.” Having once acquired jurisdiction, the court may proceed until it has been judicially informed that its power over the cause has been suspended.’ The mere filing of a petition for the removal of a suit, which is not removable, does not work a transfer. To •accomplish this the suit must be one that may be removed, and the petition must show a right in the petitioner to demand the removal. This being made to appear on the record, and the necessary security having been given, the power of the state court in the case ends. and that of the circuit court begins.
“All issues of fact made upon the petition for removal must be tried in the circuit court, but the State court is at liberty to determine for itself whether, on the face of the record, a removal has been effected. If it decides against the removal and proceeds with the cause notwithstanding the petition, its ruling on that question will be reviewable here after final judgment under section 709 of the Revised Statutes. [Removal Cases, 100 U. S. 457, 472 ; Railroad Co. v. Missis *659 sippi, 102 U. S. 135, 141 ; Kern v. Huidekeper, 103 U. S. 485 ; Railroad v. Koontz, 104 U. S. 15 ; Chesapeake & Ohio Railroad Co. v. White, 111 U. S. 134, 137.] If the State court proceeds after a petition for removal it does so at-the risk of having its final judgment reversed, if the record on its face shows that when the petition was filed that court ought to have given up its jurisdiction.”
So that the question whether a removal would be effected by the filing of the petition and bond remained to be decided by the Cooper circuit court, on the face of the record as made up, after the filing of the same, and unless judicially informed by the records so made that the suit was removable, it. might proceed in the exercise of its jurisdiction.
The fact stated in the petition for removal that would entitle the defendant to the removal, was that the plaintiffs; are citizens of the State of Missouri, and the defendant is a citizen of the State of Kansas. Now, while this fact is not to be disputed, but taken as true, it further appears from the-record that “the controversy” inaugurated by their petition, is not between them in their individual character as citizens-, of the State of Missouri and the defendant, but in their official character as members of “The Board of Eailroad and Warehouse Commissioners of the State of Missouri.” Hence, it is argued, for the respondents by the Attorney-General, that-the controversy is not between citizens of different States, but between the State of Missouri and a citizen of the State of Kansas, and as the statute does not authorize the removal off a suit between a State and citizens, and a State can not be a citizen of any State; that it thus appears from the record that the case was not removable under the statute; the jurisdiction of the circuit court of Cooper county was not divested by the application for removal; and it committed no error in proceeding with the case to final judgment. This presents, the crucial question on this appeal.
*660 Is this a suit by the State of Missouri against the defendants ? If so, then beyond question, the case was not removable to'the United States court, and the circuit court of Cooper county was not divested of its jurisdiction; for it is well settled law that “a suit instituted by a State in one of its own courts against a citizen of another State is not removable to the circuit court of the United States on the grounds of diversity of citizenship of the parties.” [State of Alabama v. Wolffe, 18 Fed. Rep. 836 ; Postal Telegraph Cable Co. v. Alabama, 155 U. S. 482 ; Stone v. South Carolina, 117 U. S. 430 ; Germania Ins. Co. v. Wisconsin, 119 U. S. 473 ; Ames v. Kansas, 111 U. S. 449.]
Although the State of Missouri is not a nominal party to 'the suit, yet if it is the real party in interest, the controversy is between the State 'and the defendant, and the Federal statute does not apply; and the question whether the State is the •actual party to the controversy must be determined by a consideration of the whole record. [In re Ayers, 123 U. S. 443 ; Carson v. Hyatt, 118 U. S. 279 ; Hagood v. Southern, 117 U. S. 52 ; Maryland v. Baldwin, 112 U. S. 490.] The law looks to “things, not names, to the actors in controversies -and suits, not to the mere forms or inactive instruments used in conducting them, in virtue of some positive law.” [McNutt v. Bland, 2 How. loc. cit. 14.]
The positive law authorizing this action is section 2653, Revised Statutes 1889. The provisions of which, bearing upon the present inquiry, are as follows: “Where the complaint involves either a private or a public question as aforesaid, and the commissioners have ma.de a lawful order or requirement in relation thereto, and where such common carriel’, or the proper officer, agent or employee thereof, shall violate, refuse or neglect to obey any such order or requirement, it shall be lawful for the board of railroad commissioners, or any person or company interested in such order or requirement, to apply in a summary way, by petition, to any *661 ■circuit court at any county in this State into or through which the line of railway of the said common carrier enters or runs, alleging such violation or disobedience, as the case may be; and the said court shall have power to hear and determine the matter on such short notice to the common carrier complained •of as the court shall deem reasonable......and if it be made to appear to the court on such hearing......that the lawful orders or requirements of such commissioners drawn in question have been violated or disobeyed, it shall be lawful for such court to issue a writ of injunction or other proper process, mandatory or otherwise, to restrain such common carrier from further continuing such violation of such order or requirement of said commissioners, and enjoin obedience to the same......And in case of any disobedience of any such injunction or other proper process, mandatory or otherwise, it shall be lawful for such court to issue writs of attachment, or other «proper process of said court incident or applicable to writs of injunction or other proper process, mandatory or otherwise, against such common carrier; and if a corporation, against one or more of the directors, officers or agents of the same, or against any owner, lessee, trustee, receiver or other persons failing to obey such writ of injunction or other process, mandatory or otherwise; and said court may mate an order directing such common carrier or other person so disobeying such writ of injunction or other proper process, manditory or otherwise, to pay such sum of money, not exceeding for each carrier or person in default the sum of one hundred dollars per day, for every day after a day to be named in the order that such carrier or other person shall fail to obey such injunction or other proper process, mandatory or otherwise; and such money shall be payable to the school fund of the county in which such proceeding is pending; and payment thereof may, without prejudice to any other’ mode of recovering the same, be enforced by attachment or order in the nature of'a *662 Avrit of execution, in like manner as if the same had been recovered by final decree in personam in such court........ Whenever any such petition shall be filed by the commissioners as aforesaid, it shall be the duty of the Attorney-General,. Avhen requested by said commissioners, to prosecute the same. ......The costs of such proceedings may be, Avith the approval of the Attorney-General and Governor of the State, Avhen such suit is brought by any private person, and Avhen brought by said commissioners shall be ordered by the commissioners to be paid, in the first instance, uot of any money in the treasury not otherwise appropriated; and if upon final hearing the decision is against the said common carrier or other person against Avhom the proceeding is being prosecuted, such common carrier or person shall be liable for the costs, for Avhich judgment may be rendered as in any other case.”
By section 2658, it is further provided that: “To defray the necessary expenses of the railroad commissioners in making investigations and prosecuting suits, and to pay all necessary costs attending the same, there is hereby appropriated,, out of any money in the State Treasury not otherwise appropriated, the sum of ten thousand dollars, to be draAvn upon the warrant of the State Auditor, issued upon requisition of the railroad commissioners, approved by the Governor, which requisition shall be accompanied by an itemized statement of the costs and expenses to be paid.”
The general rule is that “when the plaintiff on the record' has no real interest in the subject-matter of the controversy, and can derive no advantage from the judgment, but the suit is required to be brought in his name because he holds the formal right to sue, although the action is really prosecuted' for the benefit of another, the record plaintiff is only a nominal party, whose citizenship Avill not affect the right of removal; such right Avill depend upon the relative citizenship of the real party in interest.” [Black’s Dillon on Removal of Causes, sec. 86.]
*663 Under this statute the suit is brought in the name of the “Board of Railroad Commissioners” because they hold the formal right to sue, but the members of the board, neither individually nor collectively, have any interest in the subject-matter of the controversy, and can derive no advantage or benefit, nor suffer any injury or loss from the judgment therein. In Ferguson v. Ross, 38 Fed. Rep. 161, holding that an action under the laws of New York in the name of “the Shore Inspector” to recover a penalty-for depositing prohibited material in the waters of the bay and harbor of New York, which penalty, when recovered, goes into the State Treasury, is in effect an action by the State, and therefore not removable under the act of Congress in question, it was said: “The nominal plaintiff here is an individual, but he sues only in his official character. The suit is brought to enforce a police regulation of the State. He has no personal interest in its subject-matter, not even for his fees or commission, for he is a salaried officer, whose compensation is secured irrespective of the result of the suits he may bring. In the event of his removal from office the suit would be continued by his successor, not by himself. Courts will look behind and through the nominal parties on the record to ascertain who are the real parties to the suit, and will determine whether a State is the real party to an action brought by or against its officer by a consideration of the whole record” [citing authorities]. “The real party prosecuting these suits is the State of New York, and they are therefore not removable under the act' of 1881.” On the other hand, in Regan v/ Farmers’ Loan & Trust Co., 154 U. S. 362, holding that a suit in equity against the railroad commissioners of the State of Texas, assented to by that State, in the act creating the commission, was not a suit against the State. It was said: “So far from the State being the only real party in interest, and upon whom alone the judgment effectively operates, it has in a pecuniary sense no interest at all. Going back of all *664 matters of form, the only parties pecuniarily affected are the shippers and the carriers, and the only direct pecuniary interest which the State can have arises when it abandons its governmental character, and, as an individual, employs the railroad company to carry its property. There is a sense, doubtless, in which it may be said that the State is interested in the question, but only a governmental sense. It is interested in the well-being of its citizens, in the just and equal enforcement of all its laws; but such governmental interest is not pecuniary interest which causes it to bear the burden of an adverse judgment. Not a dollar will be taken from the treasury of the State, no pecuniary obligation of it will be enforced, none of its property, affected'by any decree which may be rendered.”
While neither of these cases, upon the facts in judgment,, for obvious reasons, can be regarded as direct authority in the present case, an analogue of which can not perhaps be found in the Reports, much reliance is placed upon the reasoning in each by counsel respectively; the Attorney-General contending that the case in hand is within the reasoning of the first, and counsel for defendant that it is within the reasoning of the last. So these cases may serve, if not for authority, at least as pointers to a proper solution of the question of “real interest” under this statute.
The State in its governmental capacity, having in previous sections of the statute made provision for regulating the rate and charges of common carriers for carrying passengers and freight, and provided for a hearing before its board of commissioners of all complaints for a violation of those regulations, and that the finding of the board shall be prima facie evidence of the reasonableness and justness of the charges by it found, in this section of the statute makes provision for a civil ¡action to enforce the requirement in behalf of two classes-of persons, first “the board of railroad commissioners,” second' “any person or company interested in such order or require *665 ment.” Now while in actions under the statute by persons of the second class, which generally will be shippers or passengers, the State has no pecuniary interest, it is not so in actions under this statute by persons of the first class, its board of railroad commissioners. In such actions it abandons its governmental character, enters a court of competent jurisdiction as a suitor under the law, incurs the same liability for costs and expenses as does any^ other suitor, to be paid under the express provision of the statute, out of any money in the treasury not otherwise appropriated, and is, moreover, pecuniarily interested, not only by reason of the liabilities it incurs in the action but because of its pecuniary interest in the judgments which may be obtained and which when pushed to final extremity of execution, may result in the payment of penalties, not directly into the State Treasury, it is true, but into the treasury of one of its political subdivisions for the benefit of the public schools, to the establishment and maintenance of which its credit is pledged by the organic law- It seems to us therefore, that the State in addition to its governmental has a real pecuniary interest in the subject-matter of this controversy and that the suit is being prosecuted for its benefit in every sense, and is not subject to removal to the United States court, and we so hold.
(2) Counsel for defendant in his reply brief contends that the judgment should be reversed, because the circuit court of Cooper county proceeded to trial when the defendant had no reason to expect that >a trial would be insisted on. It appears from the record that the cause came on for trial in the Cooper circuit court in due course nearly two years after defendant’s motion for a removal to the United States court had been overruled. By the overruling of that motion, the defendant was advised in the most direct and formal manner that the circuit court of Cooper county intended to maintain its jurisdiction to try and determine this cause in due course.
Thereupon it chose to stand upon its motion, filed a tran *666 script of the proceedings of the Cooper circuit court in the United States court, and thereafter persistently maintained that the case had been transferred; that the Cooper circuit court had no jurisdiction to proceed further therein and neglected to make any preparation for its trial in said court, up to the very day of the trial, when it filed a written protest in which protesting in-the strongest terms against the jurisdiction of that court, it asked the court to suspend further action until the next term of court in order that the defendant might have sufficient time “to establish that this court has no jurisdiction to proceed in this cause, or to entertain jurisdiction over the same; or if the court shall hold that it has such jurisdiction, then to enable the defendant to determine what course it will pursue, and whether or not it will submit to the jurisdiction of the court, or whether it will take part in the proceedings of the case, still protesting against the jurisdiction of the court, or whether it will refuse to appear and take any part in the proceeding.” The court had long since held that it had jurisdiction and we know of no law or rule of practice by which courts are required to delay the exercise of their jurisdiction until suitors shall have made up their minds as to whether they will submit to it or not. The court committed no error in proceeding with the trial without giving heed to this protest. The judgment of the circuit court is affirmed.
All concur except Sherwood, J., absent.