**CITY AND COUNTY OF DALLAS LEVEE IMPROVEMENT DIST. ex rel. SIMOND et al. v. ALLEN, and forty-one other cases.**

**Nos. 3681—937 to 3722—978.**

District Court, N. D. Texas, Dallas Division. Jan. 12, 1937.

778

John C. Robertson, W. H. Shook, Allen Charlton, Locke, Locke, Stroud & Randolph, Worsham, Burford, Ryburn & Hincks, all of Dallas, Tex., Wren, Pearson & Jeffrey, of Ft. Worth, Tex., W. H. Francis, Roy C. Ledbetter, Bromberg, Leftwich, Carrington & Gowan, Charles C. Huff, Hamilton, Hamilton & Turner, George O. Wilson, Burgess & Stewart, Turner, Rodgers & Winn, and Grady Niblo, all of Dallas, Tex., H. S. Garrett, of Fort Worth, Tex., and Bullington, Humphrey & King, of Wichita Falls, Tex., for the motions.

Thompson, Knight, Baker & Harris and Alex Weisberg, all of Dallas, Tex., and Eberhard P. Deutsch, of New Orleans, La., opposed.

ATWELL, District Judge.

The Trinity river divides the city of Dallas. Probably an hundred thousand are to the north and west of it, and more than two hundred thousand to the east and south. The main channel and the land contiguous thereto, in the total width of approximately three-quarters of a mile, overflowed once or more annually, and such territory was, therefore, uninhabitable. Over this river and valley several steel and concrete motor, street, and rail-

way bridges have been built. Some ten years ago the state Legislature completed a system of levee district legislation under which a district was created in the territory mentioned, and bonds were issued. With the funds realized therefrom, levees were constructed, and the main channel straightened. These funds ran into millions of dollars, and the bonds were sold throughout the United States. Default was made in the collection of the taxes and in the payment of the obligations so created, and judgments have been rendered in this court against the Levee District, in the respective sums of $78,210 and $848,012.90. The plaintiffs in those two suits at law were different. The total bond issue authorized by the commissioners' court under the act was 6,000 bonds of $1,000 each. They were negotiated. Approximately $2,000,000 of the same, together with interest and coupons, are now due and unpaid.

The complainants in these 42 cases are Robert E. Simond, John G. Getz, Jr., and John Dane, who represent that they are the legal owners and holders of the two judgments mentioned, and of more than a majority of the bonds and coupons that are outstanding and unpaid. They allege that taxes have been duly and regularly levied against the property within the district for the purpose of providing a fund with which to pay interest and to provide a sinking fund for the payment of the principal. That such taxes are for that exclusive purpose. That the Levee District has no interest therein, and no right to use or appropriate any part thereof for its own use or benefit. That said taxes are unpaid and delinquent and have been so delinquent for more than 60 days prior to the commencement of the suit. That the supervisors of the district have not commenced, nor instituted any suit for their collection, and have failed and refused to make any effort to collect the same, or, to take any steps to enforce the collection. That instead of attempting to collect they have encouraged the taxpayer not to pay, and that there exists a virtual taxpayers strike in which the supervisors and officials are participants. That the holders of these bonds are widely scattered throughout the United States, that a large part of such bonds are now past due and unpaid, and that they all have a common interest in such matter, but the class is so numerous as to make it impracticable to bring them all into court. It is alleged that the complainants bring the suit in the name of the

Levee District for themselves, as relators, and for the use and benefit, as relators, of all other bondholders.

In each of the suits, there is a specific description of the levied taxes for each year, with the rate thereof, and a meted, bounded description of that particular defendant's land. They ask judgment for the amount of the taxes, penalty, interest, and costs, and for a foreclosure of the tax liens on each tract, and for an order of sale, together with writ of possession for the purchaser.

In an amendment filed a day or two before this hearing the complainants alleged that the supervisors are Stemmons, Tipton, and Powell. That Stemmons is the leading influence and dominates the other supervisors. That the supervisors, including Stemmons, individually and as stockholders in corporations, own and control and are interested in a large proportion of the taxable property within the district. That it is their purpose to delay and prevent and avoid the collection of any taxes in order to coerce and intimidate the bondholders into a readjustment upon the bond debts on terms arbitrarily dictated by the said Stemmons.

The act under scrutiny begins at article 7881, 1936, Vernon's Texas Statutes.

Nearly all of the defendants have filed motions to dismiss, and contend that the court is without jurisdiction because in the Levee Improvement District Act (Vernon's Tex.Civ.St. 1936, art. 7972 et seq.) the court therein named is vested with exclusive jurisdiction, and, further, because there is no diversity of citizenship. They also suggest that the court should not undertake to administer tax matters.

The last suggestion, though supported, under the peculiar circumstances of that case, by Tolman v. Clark County Drainage District (C.C.A.) 62 F.(2d) 226, is not disturbing, for the reason that equity powers are quite sufficient to harvest a judgment that has been entered for a plaintiff in a lawsuit in the national court. Usually, if it is a tax suit, which is to support and out of which is to come the funds to pay a bond issue, mandamus is effective, or such other relief as may fit particular facts. To hold differently would be to leave the nonresident bond buyer and money furnisher, for local improvements, without an adequate protection.

In the Tolman Case, the Circuit Court of Appeals was construing the Wisconsin

Act in the light of state court decisions, and appropriately referred the bondholders to that court.

■ As to the claim that the commissioners' court, which is given jurisdiction over the carving of the district, the ordering of the election, the validation of the bonds, and other supervisory matters, has exclusive jurisdiction of any and all efforts to collect such bonds, I do not so read the article. Article 7978 provides that "Such court shall have exclusive jurisdiction to determine all issues in respect to the creation, or not, of such district, and of all subsequent proceedings in respect to said district if the same should be created." Article 8017 provides for the method to be pursued in the recovery of delinquent taxes. It first provides that the board of supervisors, which is created in the act, may proceed to collect them. The preceding article, 8016, provides that the collection of delinquent taxes shall be governed by the laws applying to the collection of delinquent state and county taxes, foreclosure decree and shall include a writ of possession. The district is authorized to do and perform all things necessary for such collection. The taxes are a first and prior lien upon the property. Subdivision (i), of article 8017, provides that, "Whenever the board of supervisors * * * shall fail to commence suits within sixty days after taxes have become delinquent, the holder or holders of any bonds issued by such levee improvement district, shall have the right to employ counsel to bring such suit in the name of the levee improvement district upon the relation of such holder or bondholders; and such suits may be proceeded with in the same manner as hereinabove prescribed, and shall in all respects be governed by the provisions of this section." Subdivision (f), of the same article provides that, "Such suits shall be conducted in the name of the levee improvement district and in accordance with the practice and proceedings of the district courts in the State, except as herein otherwise provided."

■ Unless a special act plainly makes inapplicable a general act by dealing with the entire subject, the latter will control. U. S. v. Alluan (D.C.) 13 F.Supp. 289, 292. Especially is this true when the general act is in accordance with the Constitution of the state in which the legislation occurs, and the special act, in that particular point is not. The Constitution of Texas requires all tax foreclosure suits to be brought in the district court. Hence, we may not assume that the general language giving the commissioners' court exclusive jurisdiction over the creation and supervision of levee districts, was intended by the lawmaking body to do more than to place in that court such supervisory power, and, not to require it to do an unconstitutional thing, to wit, be a forum in which defaulting taxpayers might be sued and their property foreclosed.

The act fixes the duties of the county treasurer. The amount he shall be paid out of the sums that come into his hands, and the method that he shall follow in paying it out, which includes the signature on each voucher of two of the supervisors, and the county judge, and a careful preservation of orders for the payment of money. That a depository for the funds of the district shall be chosen by the supervisors, in which shall be deposited such funds. The collection of the tax is controlled by the provisions of article 8012, which relate to the creation of a sinking fund for the retirement of the bonds, and the method that shall be followed in the investment thereof.

We must keep in mind that this sinking fund, the activity of the officers of the Levee District, the continued assessment and collection of taxes, the investment of the moneys so realized, the placing of the same in a proper depository, and the withdrawal thereof, with the paying out of the same by the handling officials, is a continuing process for the benefit of all of the bondholders, and must run until the life of each bond has expired. These, it seems to me, are continuing and fundamental duties that the Legislature exacts of the Levee District.

The plaintiffs, outside of the Dallas Levee District, are nonresidents. The defendants in all of the suits, as well as the Levee District itself, are residents of Texas. If the Levee District is a mere nominal party, then a bondholder would be considered the real plaintiff. McNutt v. Bland, 2 How. (43 U.S.) 9, 11 L.Ed. 159; State of Maryland v. Baldwin, 112 U.S. 490, 5 S.Ct. 278, 28 L.Ed. 822; Indiana ex rel. Stanton v. Glover, 155 U.S. 513, 15 S.Ct. 186, 39 L.Ed. 243.

Those three outstanding early authorities relate to bonds which ran in the name of the state for the benefit of any one wronged by officers who had given

such indemnity for the faithful performance of official duty.

The rule may be more definitely found in harmony with the facts of this case in United States Fidelity & Guaranty Company v. United States, 204 U.S. 349, 27 S. Ct. 381, 51 L.Ed. 516. The amount involved there was almost insignificant, and the defendant pleaded lack of jurisdiction because of such smallness and claimed that the United States was a nominal party only, since it was the obligee in a contractor's bond for the benefit of materialmen and laborers in pursuance of an act of the Congress. The court said that it had the legal right and was the principal party to the contract, and in view of the words of the statute, had an interest in the performance of its provisions. In Glenn v. Levee District, 114 Tex. 325, 268 S.W. 452, a Texas appellate court, in a suit on similar bonds to these involved here, held that the bondholders have a mere indirect interest; that the legal title to the cause of action is in the district under the statute, and that the district alone may sue for the taxes.

 May we safely say that an utility which is created by an act of the Legislature and is declared to be a party in whose name action shall be brought, is merely nominal? Under the law the recovery must be by the district, since funds go into its treasury. The funds belong to the district for the purpose fixed in the statute. The bondholders have a right to see that such funds are not diverted, and the funds, after their collection, are subject to pro rata legal application and sinking fund requirements. There appears to be no doubt that there is ample power in this court, either by mandamus, or in chancery, to require the performance of garnering and harvesting acts. Nor is this court to be bounden by the definitions of the state Legislature as to who is an indispensable or a nominal party, but this court is bounden by the acts of the state Legislature in so far as it creates an artificial personality with certain powers. Such powers are the children of the creator. That must be as true of an artificial person as it is of a real person. The national court has no control over the residence of parties, but it does have the right to say that one must reside in certain territory before that one can enter the national tribunal. That is wholly and simply the fight here. The Dallas Levee District being an indispensable and an absolutely necessary party under the law which created it, for the enforcement of rights of creditors and bondholders, it may not be shunted aside as a mere nominal party. See Hamer v. N, Y. Railways Co., 244 U. S. 266, 37 S.Ct. 511, 61 L.Ed. 1125.

The dictionary definition of nominal is, "named as a mere matter of form."

Necessary parties are not necessarily indispensable parties.

A party without whose presence justice cannot be done is indispensable. In some cases suits are required by statute to be brought for one person in the name of another. The other is the indispensable and controlling party. The citizenship of such a nominal party is immaterial. An infant who sues by next friend is indispensable— the next friend is nominal. Executors, administrators and trustees sue for others, but their residence, and not the residence of the others, controls within this sphere as necessary and indispensable and not nominal. They have a direct interest. As has already been indicated, the levee district is not only indispensable for the bringing of the suit but for the minutia of the statutory proceedings and because it has a direct interest in the funds that are recovered, their place of keeping, their subsequent disbursement, their investment, and their liability for the payment of certain fees. Such a direct interest precludes the naming of the district as merely nominal.

It would appear that this purely statutory proceeding does not authorize one bondholder nor the holder of a judgment on such bond, to sue the taxpayer direct. The bondholder is given the right to couple himself with the district, and come in in its name only. Without the statute the bondholder would have no right to sue the taxpayer. The bondholders' contract runs with the levee district. The bondholder has no privity of contract with the taxpayer. It is only because the statute authorizes the bondholder to initiate proceedings in the name of the district that such a suit may be brought. See Preston v. Sturgis Milling Company (C.C.A.) 183 F. 1, 32 L.R.A.(N.S.) 1020. Unlike the case of Guardian Savings & Trust Company v. Road Improvement District, 267 U.S. 1, 45 S.Ct. 201, 69 L.Ed. 487, no interest in the tax is created. The economic interest of the bondholder in the Levee District taxes is not sufficient of itself, to overturn the requisite of the statute as to the name that shall style the suit for their

collection, and the authorities that shall control the fund when so collected. The Guardian Savings & Trust Company Case is, and was, most troublesome to me at argument. It is big with remedies for the investor, but such remedies arise out of the well-known equitable interest, there, specially created in the taxes themselves. There is no such condition in the case at bar. I think equally discriminative features are discoverable in the condemnation cases of Madisonville Traction Company v. St. Bernard Mining Company, 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462, and Mason City & Fort Dodge Railway Company v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629. Those cases simply hold that when a right and a correlative remedy have been created by the state, that right may be enforced by that remedy in the national court without regard to conditions imposed by the state statute which would otherwise deprive the national court of jurisdiction.

■ The maintenance of these suits by invoking the ancillary jurisdiction is likewise difficult of solution. It must be remembered, however, that ancillary jurisdiction only goes to the two judgments that have already been rendered. Those two judgments are against the Levee District. These suits are against the taxpayers; these suits are not only for those judgments, but they are, in truth, creditors' bills into which is brought not only the original defendant against whom the judgments were rendered, but likewise all bondholders as complainants, as well as all taxpayers, as respondents. I am so doubtful about the right to move in such a wholesale manner, that I believe the bills may not be defended on that ground.

■ Likewise, these complainants do not seek to enforce the judgments, they merely attempt to put the funds that may be realized from foreclosure sales of the taxpayers property into the treasurer's hands, where, under the law, it must undergo certain deductions, certain distributions, and statutory supervisions. True it is, that where a state statute creates a new equitable right of substantive character, which can be enforced by proceedings in conformity with the pleadings and practice appropriate to a court of equity, such enforcement may be had in a federal court, provided a ground exists for invoking federal jurisdiction. But such enforcement of a new equitable right created by the state is subject to the qualification that such an enforcement must not impair any right conferred, or conflict with any inhibition imposed, by the Constitution or laws of the United States. Henrietta Mills v. Rutherford County, 281 U.S. 121, 50 S.Ct. 270, 74 L.Ed. 737; Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L. Ed. 447. The last case specifically limits the observation by denying to the inferior federal court any jurisdiction other than that of the English Court of Chancery, thus, where a state has provided a remedy against illegal taxes by injunction, such remedy may not be found in the national court.

The Dallas Levee District bondholder has no interest, as has already been observed, in the taxes. A different question would be presented here if the plaintiffs in the original suit, where judgments have already been procured, were asking the court to compel the Levee District to go forward with the assessment and collection of taxes in order that their judgments might be paid. That, I conceive to be the usual method. It would not be wise to say that other roads do not exist.

Allegations such as are made by the complainants appeal strongly to a chancellor. There is judicial chagrin, not to say embarrassment, in affording any sort of relief, on dilatory pleas, in the face of such strong representations of unfairness. The money for the creation of the improvement was paid in by citizens from abroad and they should have the ear, and I have no doubt they will have the ear, of a court that shall speed returns to them.

After considerable thought, I have reached the conclusion that the motions to dismiss must be sustained.

■ In cases Nos. 3686, 3687, 3695, 3698, 3705, 3712, and 3719, no motions have been filed, but it is the duty of the court, when lack of jurisdiction is apparent in any cause before it, to act. Therefore, each of the 42 cases is dismissed for want of jurisdiction.