[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1086 
Who should administer the estate of Keith Lamar Adams, deceased?
The Probate Court of Limestone County granted letters of administration on Adams's estate to Michelle Boan. Ms. Margie Adams, Adams's mother, and Ms. Tammy Adams, from whom Adams was divorced and who is the mother of Adams's minor children (referred to here as "appellants"), petitioned the probate court to remove Ms. Boan as administratrix of Adams's estate. The administration of the Adams estate was removed to the Circuit Court of Limestone County. That court, after hearing ore tenus evidence, found that at the time of Adams's death, he and Ms. Boan were husband and wife by a common law marriage and denied the petition to remove her as administratrix. This appeal followed. We affirm.
After a one-month acquaintance, Adams, a divorced man, cohabited with Ms. Boan for approximately four months. Adams was then hospitalized for seven or eight weeks. It was during that time, Ms. Boan said, that she began to consider them to be married. Ms. Boan produced a letter that Adams had written to her from the hospital in which he referred to himself as her husband. After being released from the hospital, Adams gave Ms. Boan a wedding band. They resumed living together and continued to live together, at various locations, until Adams's death approximately two years later. Ms. Boan testified that she and Adams shared household duties and living expenses. Four witnesses testified that they had heard Adams refer to Ms. Boan as his wife, and three of those witnesses and four others testified that they considered Adams and Ms. Boan to be married. Three other witnesses testified that they did not consider Adams and Ms. Boan to be married. Members of Adams's family testified that they did not consider Adams and Ms. Boan to be married. Some documents, such as a joint bank account, an automobile certificate of title, an automobile insurance application, a library card, and a bill of sale for the purchase of chickens, list Adams and Ms. Boan as married. Some documents, such as her driver's license, a bill of sale for an automobile, their employment applications, and their income tax forms, list Ms. Boan and Adams as single.
Where the trial court has heard ore tenus evidence and has made findings based on that evidence, we presume that the trial court's judgment based on those findings is correct, and it will be reversed only if the judgment is found to be plainly and palpably wrong, after a consideration of all the evidence and after making all the inferences that can be logically made from the evidence, Clark v. Albertville Nursing Home, Inc.,545 So.2d 9 (Ala. 1989); and King v. Travelers Ins. Co.,513 So.2d 1023 (Ala. 1987); and the trial court's judgment will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment. Clark v.Albertville Nursing Home, Inc., supra; McCrary v. Butler,540 So.2d 736 (Ala. 1989). Because there was evidence to support the trial court's factual findings, we must affirm its judgment based on those findings, unless there was a misapplication of the law to the facts.
The elements of a valid common law marriage in Alabama are: (1) capacity; (2) present agreement or mutual consent to enter into the marriage relationship, permanent and exclusive of all others; (3) public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations. Copeland v. Richardson,551 So.2d 353 (Ala. 1989); Downs v. Newman, 500 So.2d 1062 (Ala. 1986).
The appellants argue that, as a matter of law, Ms. Boan lacked the capacity to create a valid common law marriage. We disagree. The record indicates that Ms. *Page 1087 
Boan was 16 years old when the agreement to be married was formed and that she was 18 when Adams died. The minimum age for contracting marriage is 14. Ala. Code 1975, § 30-1-4. In Whitev. Hill, 176 Ala. 480, 58 So. 444 (1912), a valid common law marriage was found where the man, although a minor, was over 17, the minimum age required at that time to be able to contract marriage. See Ala. Code of 1907, § 4879. The appellants argue that the marriage should not be considered valid because Ala. Code 1975, § 30-1-5, requires a person under the age of 18 who is intending to marry to acquire the consent of her parents. While this is true, we note that the predecessor to §30-1-5 existed when White v. Hill was decided, and this Court did not rule that such a requirement invalidated the common law marriage. Moreover, this Court held in Robertson v. Robertson,262 Ala. 114, 77 So.2d 373 (1955), that § 30-1-5 is merely directory and that failure to adhere to its provisions is not grounds for annulling a marriage. Also, it should be noted that § 30-1-5 addresses marriages solemnized by formality, not common law marriages. Where a marriage is solemnized by formality, it is possible for a probate court to receive proof of parental consent, either orally or written.
There must be a present agreement or mutual consent to enter the marriage relationship, permanent and exclusive of all others. Downs v. Newman, supra; Boswell v. Boswell,497 So.2d 479 (Ala. 1986). The appellants contend that a present agreement or mutual consent to be husband and wife did not exist between Adams and Ms. Boan because, they say, Adams did not intend for the relationship to be "permanent and exclusive of all others." Specifically, they argue that the facts are undisputed that Adams had an ongoing, sexually intimate, affair with a woman other than Ms. Boan, and a brief affair with yet another woman. Ms. Boan testified that neither she nor Adams had sexual relations with anyone else from the time they agreed to be married to the time of Adams's death. There was credible evidence that at the time Adams and Ms. Boan agreed to be married, Adams was not engaged in an affair with another woman. This would support the trial court's finding that there was a present agreement or mutual consent to enter into the marriage relationship, permanent and exclusive of all others.
Once the man and woman have established a present agreement or mutual consent to enter into the marriage relationship, permanent and exclusive of all others, a common law marriage is equal in validity with a ceremonial marriage. Hudson v. Hudson,404 So.2d 82 (Ala.Civ.App. 1981). In Skipworth v. Skipworth,360 So.2d 975, 977 (Ala. 1978), this Court stated the following concerning a present agreement or consent to be husband and wife:
 "[T]he operative time is when the agreement is initially entered into, and once other conditions of public recognition and cohabitation are met the only ways to terminate a common-law marriage are by death or divorce. A party cannot legally terminate the marriage by simply changing his or her mind and moving out or by telling selected individuals, 'We're not really married.' "
Once there is a marriage, common law or ceremonial, it isnot "transitory, ephemeral, or conditional." Turner v. Turner,251 Ala. 295, 297, 37 So.2d 186, 188-89 (1948). Once married, by common law or by ceremony, the spouses are married. There is no such thing as being a "little bit" married; and once married, one spouse's liaison amoureuse does not end the marital status, whether that status was created by common law or by ceremony, though it may afford the other spouse a ground for judicially terminating the legal relationship.
Adams and Ms. Boan may not have achieved that idyllic relationship described by then-67-year-old Justice William O. Douglas in his hymn to marriage that concludes his majority opinion in Griswold v. Connecticut, 381 U.S. 479, 486,85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965);[1] but *Page 1088 
Justice Douglas's admirable sentiments refer to the "being there" and not to the process of getting there. There was enough evidence of permanence and exclusivity that we cannot hold that the trial court misapplied the law to the facts, or that his factual findings were plainly and palpably wrong.
The appellants also argue that the evidence before the trial court did not sufficiently prove that there was public recognition of the existence of the marriage. They point out that Adams and Ms. Boan declared themselves single on their tax forms and employment applications and that they did not hold themselves out as married to members of Adams's family.
Following an agreement to be husband and wife, a man and a woman must so live as to gain public recognition that they are living as husband and wife rather than in a state of concubinage. Downs v. Newman, supra; Beck v. Beck, 286 Ala. 692, 246 So.2d 420 (1971). The manner in which a couple must live in order to gain public recognition of the existence of the marriage is well stated in Maryland v. Baldwin,112 U.S. 490, 5 S.Ct. 278, 28 L.Ed. 822 (1884):
 "But where no such ceremonies are required, and no record is made to attest the marriage, some public recognition of it is necessary as evidence of its existence. The protection of the parties and their children and considerations of public policy require this public recognition; and it may be made in any way which can be seen and known by men, such as living together as man and wife, treating each other and speaking of each other in the presence of third parties as being in that relation, and declaring the relation in documents executed by them whilst living together, such as deeds, wills, and other formal instruments. . . ."
112 U.S. at 495, 5 S.Ct. at 280-81 (emphasis added), cited with approval by this Court in Gilbreath v. Lewis, 242 Ala. 510,7 So.2d 485 (1942); Piel v. Brown, 361 So.2d 90 (Ala. 1978); andDowns v. Newman, supra. Having reviewed the record, we find evidence of each of the criteria listed in Maryland v. Baldwin,supra, from which the trial court could have found that there was public recognition of a marriage between Adams and Ms. Boan.
We affirm.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] "Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions."
 *Page 356