LIVINGSTON v. BRADFORD.

1. SLANDER—CHARGE OF THEFT—QUALIFIED PRIVILEGE.

Where the cashier of a bank, who suspected that a minor em-
ployed as janitor and underclerk was in the habit of taking
small sums of money from the bank, and that this occasioned
the shortage in the bank accounts which occurred from day
to day, accused the boy of the theft in the presence of the book-
keeper, who was the only other person who had access to the
funds, and who, as well as the cashier, was interested in their
safe-keeping, and later in the same' day informed the boy's
father, in a private conversation, that his son had taken the
money, the communications were the subject of a qualified
privilege, and not actionable in the absence of proof of express
malice.

2. SAME—EXPRESS MALICE—EVIDENCE.

The mere fact that the cashier, for the purpose of determining
whether the suspected employé was responsible for the short-
ages, placed marked coins where the latter might take them
if he were so disposed, was not sufficient to establish express
malice.

Error to Berrien; Coolidge, J.   Submitted October 7,
1897.   Decided December 7, 1897.

Case by William G. Livingston, an infant, by his next
friend, against Walter T. Bradford, for slander.   From a
judgment for plaintiff, defendant brings error.   Reversed.

N. A. Hamilton, for appellant.

James O'Hara (Hardin W. Davis, of counsel), for
appellee.

LONG, C. J.   This is an action for slander, brought by
the plaintiff, a young man 18 years of age, against the de-
fendant, who is cashier of the Commercial State Bank
at St. Joseph.   The bank has been in existence about five
years.   The plaintiff went into the employ of the bank,

having been selected and engaged by the defendant April 30, 1896, at four dollars per week; and was discharged by the defendant January 30, 1897. Thomas Clark was bookkeeper. No others but plaintiff, Mr. Clark, and defendant had access to the working room of the bank. Plaintiff acted as janitor and underclerk, and sometimes helped to count the cash, especially the silver. The bank had the usual counter, so that an outsider could not reach in and take the money. Previous to January 30th, there had been an unusual run of shortages. Between December 22d and January 20th they amounted, in various small sums, to $31.74. On Tuesday previous to January 30th, defendant placed a 50-cent piece under some papers where the plaintiff worked, which disappeared. A 25-cent piece had been placed much in the same way, and had disappeared. A silver dollar had before that also disappeared from the side of the tray where the silver was kept. On January 30th, after the close of business, the defendant, in the presence of Mr. Clark, the bookkeeper, charged the plaintiff with having taken these pieces of money. It appears that, on the afternoon this conversation was had with the plaintiff, the defendant telephoned the plaintiff's father, but was unable to find him; but later in the evening plaintiff's father found the defendant, who told him about the missing money, and that he thought the plaintiff took it. As set out in the declaration, the defendant stated to the father:

"Will [meaning plaintiff] has been tempted, and has taken some money. A dollar was there (indicating). A marked half dollar was placed under a paper, for the purpose of catching him. I placed a quarter in a paper down by the waste basket, and that was never found. Will has taken this money."

No one was present during this last conversation except defendant and plaintiff's father, and during the first conversation no one was present but the parties and Mr. Clark. These are the conversations declared upon.

It also appeared on the trial that the defendant kept a

book in which he entered from day to day the amount of shortages and longages (as it is called) of the bank. These items were entered by the defendant on the day the cash was found to be long or short; and the record shows that from July 22, 1896, to January 20, 1897, the bank was $55.87 short, of which only $6.67 was found. During that time the bank had some $19 of longages, which could not be accounted for. These shortages occurred frequently before the plaintiff entered the bank. The defendant, however, testified that he did not intend to charge the plaintiff with these entire shortages while he was there.

Plaintiff introduced evidence tending to show that the defendant made the charges stated in the declaration. Defendant admitted making such statements to the plaintiff, in the presence of Mr. Clark, and to the plaintiff's father.

At the close of the testimony, the defendant's counsel asked the court to charge the jury:

"2. Unless the jury find that the plaintiff did not take either the twenty-five or fifty cent or one dollar pieces, they should find for the defendant.

"3. If Mr. Bradford had reasonable ground to believe that the plaintiff took either of the three coins mentioned, they should find for the defendant."

"6. Before the jury can return a verdict for the plaintiff, they must find—*First*, that the plaintiff did not take either of the coins; and, *second*, that the defendant was impelled by actual ill-will and hatred to say what he did of the plaintiff."

"8. Under the general issue as pleaded, the defendant may show that the boy did take the coins.

"9. Under the pleadings and evidence, the jury must find for the defendant, unless they find as an affirmative fact that the plaintiff did not take the coins in question."

"11. The communications alleged to have been made by Mr. Bradford are shown by the evidence to be what are known as 'privileged communications,'—communications which the defendant had a right to make if true; and, unless you find that the defendant and Mr. Clark have testified falsely about the coins, your verdict should be for the defendant."

The court refused to give these requests.   In the general charge the court gave the definition of slander as "the oral defamation of another without legal excuse," and told the jury substantially that if the defendant charged the plaintiff with theft in the presence of Mr. Clark, and also in the presence of plaintiff's father, in good faith, believing the plaintiff guilty, or without malice and for justifiable ends, the statements would be privileged, and the plaintiff could not recover.   The court failed to charge what the defendant requested by these written requests, and made no reference to the taking of the coins by the plaintiff. The charge was fair to the defendant so far as it went, but complaint is made upon the refusal to charge as requested.

The suit was commenced on Monday following the Saturday upon which these charges were made.   The plea was the general issue.   Plaintiff had verdict and judgment for $125.   All the material testimony taken upon the trial is returned here.

It is claimed by counsel for defendant that the communications made to the father and to Mr. Clark, upon which this action is founded, were privileged.   Such communications, however, cannot be classed as absolute privilege, within the definition of that term laid down by this court in *Bacon* v. *Railroad Co.*, 66 Mich. 166, but rather as qualified privilege, as there defined.   The defendant communicated the facts to Mr. Clark, and stated the matter to the plaintiff in the presence of Mr. Clark. No one else was present.   Mr. Clark was the bookkeeper of the bank.   He had a right to know what the claim made by the defendant was, as he, too, was interested in the safe-keeping of the funds of the bank.   The communication was also made to the father by the defendant. No other person was present.   As was said in *Bacon* v. *Railroad Co.*, *supra:* "The question whether the occasion is such as to rebut the inference of malice if the communication be *bona fide* is one of law for the court; but whether *bona fides* exist is one of fact for the jury,"—

citing many cases in support of the proposition, and, among them, 1 Am. Lead. Cas. (5th Ed.) 193, where the rule is well stated. The communications to the father and Mr. Clark were privileged; that is, they were made on such occasions and to such persons as rebut the *prima facie* inference of malice arising from the communication of matter prejudicial to the character of the plaintiff, and throw upon him the *onus* of proving malice in fact. ˙ All the requests of the defendant above quoted should therefore have been given. They were not covered by the general charge.

But counsel for plaintiff contend that the placing of the coins there was an effort on the part of the defendant to entrap the plaintiff, and induce him to commit an offense, and that there was no justification or excuse for such conduct. No motive was shown for placing the coins there, except that testified to by the defendant. He was cashier of the bank, had hired the plaintiff, and could discharge him at any moment. It is evident, therefore, that the coins were not placed for the plaintiff to take, and thus find an excuse for his discharge. The plaintiff was 18 years of age, and apparently a young man of intelligence. He was handling the money of the bank every day, and must have known that whatever money was found behind the bank counter was the money of the bank. If he took the coin placed there by the defendant, he did so with full knowledge that it was a dishonest act. He must have known that he had no more right to it than to any of the moneys he was in the habit daily of counting. ˙ On cross-examination he testified that on several occasions he had shaken dice for cigars, and upon one occasion had played a game of poker for money, and from his testimony it appears that he was familiar with the rules of the game. It does not appear that he spent very much money in gaming, but his wages were only four dollars per week. His conduct at least shows that he had intelligence enough to know what was right in the discharge of his duties at the bank. The defendant was the cashier of the bank. The duty rested

upon him to see that the affairs of that corporation were fairly and honestly conducted. It was not unlawful, or even improper, if he suspected the plaintiff of peculation, to place these coins where he might know whether the plaintiff was in fact honest in the discharge of his duties there. Small losses, of from 25 cents to $1.50, were occurring daily. They could not be accounted for. He claims to have suspected the plaintiff, and placed these coins where, if taken, their loss would be at once discovered. It is evident some one took them. If the plaintiff took them, or the defendant had good reason to believe he took them, the plaintiff had no right to recover.

Counsel for defendant asked the court to charge the jury that they must find for the defendant. Under the record as it is returned here, we think that charge should have been given. The only question which could arise in the case is the *bona fides* of the defendant in making the statements to the plaintiff in the presence of Mr. Clark, and the communication to plaintiff's father. As we have seen, these communications were privileged; that is, the circumstances under which they were made rebut the presumption of malice, and throw upon the plaintiff the *onus* of proving malice in fact. In *Jackson* v. *Hopperton*, 16 C. B. (N. S.) 829, cited with approval in *Bacon* v. *Railroad Co.*, *supra*, Mr. Justice Erle said:

"A plaintiff does not sustain the burden of proof which is cast upon him by merely giving evidence which is equally consistent with either view of the matter in issue. Where the presumption of malice is neutralized by the circumstances attending the utterance of the slander or the publication of the libel, the plaintiff must give further evidence of actual or express malice in order to maintain his action."

There is no evidence in this case showing or tending to show malice on the part of the defendant towards the plaintiff, unless the placing of the coins may be so considered; but the circumstances surrounding that transaction rebut any such presumption. In *Toogood* v. *Spy-*

115 MICH.— 10.

*ring*, 1 Cromp., M. & R. 193, cited in *Bacon* v. *Railroad Co.*, Baron Parke remarked:

"If such communications are fairly warranted by any reasonable occasion or exigency, and honestly made, such communications are protected for the common convenience and welfare of society, and the law has not restricted the right to make them within any narrow limits."

We fail to find anything in the words spoken, the occasions upon which the communications were made to plaintiff and Mr. Clark and to plaintiff's father, or the circumstances surrounding the case, from which the jury would be justified in finding that the defendant was actuated by malice towards the plaintiff.

The judgment must be reversed, and a new trial awarded.

The other Justices concurred.