## WESTERN UNION TELEGRAPH CO. v. BROWN.

(Circuit Court of Appeals, Eighth Circuit. December 6, 1923.)

### No. 5739.

1. **Libel and slander ⚖➔36, 51(1)—Telegram held qualifiedly privileged, and presumption of malice rebuttable.**

    Stating in telegram that one was prostitute was not absolutely privileged, but was only qualifiedly privileged, and, though libelous on its face, occasion and circumstances of its writing and publication by defendant telegraph company might be such as to rebut and neutralize existence of malice, presumed from its terms alone.

2. **Libel and slander ⚖➔101(4)—When presumption of malice neutralized, plaintiff must prove malice.**

    When presumption of malice from publication libelous pre se, but qualifiedly privileged, is neutralized by the circumstances attending the utterances of the slander or the publication of the libel, the plaintiff must give further evidence of actual or express malice in order to maintain his action.

3. **Evidence ⚖➔69—Statement in telegram, made in course of business, presumed true.**

    The legal presumption is that statement in telegram that certain person was prostitute, made in the ordinary course of business, is true, because business men usually tell the truth.

4. **Telegraphs and telephones ⚖➔3—Telegraph company common carrier.**

    Under Gen. St. Minn. 1913, § 6256, a telegraph company is a common carrier.

5. **Libel and slander ⚖➔123(8)—Questions of law and fact.**

    Whether occasion and circumstances attendant on sending of telegram, stating that a certain person was a prostitute, are such as to rebut the inference of malice from the terms of the communication, is a question of law for the court; and the question whether the telegraph company acted in good faith in sending the message is a question of fact for the jury, unless the evidence relative to the latter issue will not sustain a verdict.

6. **Libel and slander ⚖➔123(8)—Telegraph company acted in good faith in sending message as matter of law.**

    Where persons claiming to be public officers sent a telegram stating that plaintiff was a prostitute, displaying to the agents of the telegraph company a silver star with the representation that they were federal agents, *held*, as a matter of law, that telegraph company acted in good faith in receiving and sending the telegram.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by Hattie E. Brown against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

Charles Burke Elliott, of Minneapolis, Minn. (Cassius M. Ferguson, of Minneapolis, Minn., and Francis R. Stark, of New York City, on the brief), for plaintiff in error.

Ben W. Palmer, of Minneapolis, Minn. (Daniel J. Hollihan, of St. Paul, Minn., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and NEBLETT, District Judges.

⚖➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SANBORN, Circuit Judge. The Western Union Telegraph Company, hereafter called the defendant, complains of alleged error in the trial of an action against it by the plaintiff below, Hattie E. Brown, in that the court refused to direct a verdict in its favor, and in that the court instructed the jury that the plaintiff was entitled to recover and that the only question for them to determine was the amount of damages that the plaintiff sustained by the defendant's receipt from the signer and its sending over its wires to the plaintiff's mother, Mrs. Ole Pearson, this telegram:

"49 N. L. St. Paul, Minn. Nov. 1–12 1917. Mr. and Mrs. Ole Pearson, Spring Park Minn. Hattie is not married to Hughie Brown been living as man wife she must make good real husband or application for warrants for white slavery extortion black mail being adulteress or common prostitute. Detectives watching her has diamond rings in pawn Ironton, Minn. reporters want her conduct newspapers. G. W. Gordon Genl. Delivery, 8 45 A. M. 11/12/17."

The evidence at the trial disclosed these facts: Arthur C. Beattie was the receiving clerk of the defendant at its general office in St. Paul. He had been in its employment for seven years; was familiar with its rules and with his duties as receiving clerk. Two men he had never seen before came into the general office of the company; one of them signed this telegram and they paid for sending it. Upon its presentation one of these men, Mr. Tibbitts, who was known to Mr. Chapple, the night manager of the defendant, who was then in the office and saw him, did most of the talking. Mr. Beattie objected to the telegram, that its language was pretty sharp and he would rather not take it. Mr. Tibbitts then said that he was a government man, working for Mrs. Pearson, paid by the government, and that she was expecting the telegram, and it would not cause any hard feelings. He said that he and Mr. Gordon were working for Mr. and Mrs. Pearson under the pay of the United States government detailed on this case, and at the same time he exhibited a silver star with the initials "U. S." upon it. Mr. Beattie testified that he would not have sent the telegram if they had not represented and he had not believed that they were federal agents, but that under these circumstances he received and sent it to the addressees. He also testified that he did not know the plaintiff, or Mr. or Mrs. Pearson, nor had he ever heard of them and that he had no feeling against them. Mr. Chapple, the night manager, testified that he was acquainted with Mr. Tibbitts and saw him in the office talking with Mr. Beattie; that Tibbitts had previously sent through him several telegrams; that Tibbitts had told him that his principal business was to have this man Hughie Brown arrested for white slavery; that he (Tibbitts) was a federal agent; that he had shown him his star and had sent a telegram over the telephone to him to deliver to Governor Burnquist, asking him for an interview the next morning regarding the Hughie Brown white slavery case. Mr. Chapple further testified that Mr. Tibbitts had, twice before the telegram in issue was sent, identified himself to him by his star as a secret service man, and that he would have sent the telegram in controversy if Tibbitts had presented it to him.

As there was no evidence that the statements in the telegram were true, it was flagrantly libelous, and, as against its senders, Gordon and Tibbitts, it was neither absolutely nor qualifiedly privileged, and, if this action had been against them, the charge of the court that the plaintiff was entitled to recover, and that the only question for them to consider was the amount of the damages, would have been right. But Beattie and the defendant are not in the class of the signers of this telegram.

[1, 2] The underlying principle which sustains the absolute privilege of certain communications is public policy. It is that the interests and necessities of the public require that the time and occasion of the publication or utterance of an alleged libelous or slanderous communication, even if it be both false and malicious, shall protect the defendant from all liability to prosecution for the sake of the public good. The communications are few that are thus absolutely privileged and the telegram under consideration is not of that class. It falls in that much larger class of libelous and slanderous communications to which a qualified privilege extends in cases where the communication is written, spoken, or published by the defendant in good faith in the discharge of some public or private duty, legal or moral, for the sole purpose of discharging that duty. In cases of this class, although the communication is libelous on its face, the time, occasion, and circumstances of its writing and publication may be such as to rebut and neutralize the existence of that malice presumed from its terms alone, and, if the defendant wrote or published it in good faith, it may be privileged. And, although this telegram is libelous "per se" and, from its sending and publication, standing alone, the malice requisite to sustain an action for actual damages is presumed, nevertheless, if the time, occasion, and circumstances of its sending and publication were such as to rebut that presumption of malice, and if Mr. Beattie and the defendant acted in good faith in receiving and sending it, it may be privileged. Bacon v. Michigan Central Railway Co., 66 Mich. 166, 33 N. W. 181, 183, 184. Livingston v. Bradford, 115 Mich. 140, 73 N. W. 135, 137—especially this quotation in the opinion at page 137 from Mr. Justice Erle in Jackson v. Hopperton, 16 C. B. (N. S.) 829, "When the presumption of malice is neutralized by the circumstances attending the utterance of the slander or the publication of the libel, the plaintiff must give further evidence of actual or express malice in order to maintain his action;" and this quotation in that opinion at page 138 from Baron Parkes in Toogood v. Spyring, 1 Cromp., M. & R. 193, "If such communications are fairly warranted by any reasonable occasion or exigency, and honestly made, such communications are protected for the common convenience and welfare of society, and the law has not restricted the right to make them within any narrow limits;" Moore v. Butler, 48 N. H. 161, 166, 168; Burch v. Bernard, 107 Minn. 210, 212, 120 N. W. 33; Atwill v. Mackintosh, 120 Mass. 177, 183; Washburn v. Cooke, 3 Denio (N. Y.) 110; Nye v. Western Union Telegraph Co. (C. C.) 104 Fed. 628; Western Union Telegraph Co. v. Cashman, 149 Fed. 367, 81 C. C. A. 5, 9 L. R. A. (N. S.) 140, 9 Ann. Cas. 693.

[3, 4] Conceding that the statements of Tibbitts and Gordon that they were federal agents employed by the United States to ferret out a suspected violation of a federal statute, and that they were sending this telegram in the discharge of their duties as such, neither Mr. Beattie nor the defendant knew or had any reason to suspect or to suppose that these statements were false, and they received and sent the telegram on the supposition that they were true. The legal presumption is that statements of this character made in the ordinary course of business are true, because business men usually tell the truth. The telegraph company is a common carrier. General Statutes of Minnesota, § 6256. Its duty and business is speedily to send dispatches presented to it. It is impractical and unreasonable to expect it when such dispatches are presented to investigate and find out the facts regarding such statements as these which were made to it when this telegram was presented, before it acts and decides to send it or to refuse to send it. It must decide promptly. Mr. Beattie and the telegraph company knew that agents of the United States were employed to search out and punish violators of its laws and the statements of these senders of this telegram were plausible.

[5, 6] The question whether the occasion and the circumstances are such as to rebut the inference of malice from the terms of such a communication is a question of law for the court, and the question whether the publishers acted in good faith is a question of fact for the jury. The question, Did the time, occasion, facts and circumstances of the receipt and sending of this telegram rebut and neutralize the malice presumed from the terms of the telegram standing alone? was a question of law for the court. The question, Did Mr. Beattie and the defendant act in good faith in receiving and sending the telegram? was a question of fact for the jury, unless the evidence relative to that issue was such that it would not sustain a verdict answering that question in the negative. Bacon v. Michigan Central Railway Co., 66 Mich. 166, 33 N. W. 181, 185, and cases there cited; Livingston v. Bradford, 115 Mich. 140, 73 N. W. 135, 137.

In our opinion the first question should have been answered in the affirmative by the court below; and, because there was no evidence that Mr. Beattie or the defendant acted in bad faith or without ordinary care in receiving and sending the telegram and the evidence that they acted in good faith was so conclusive that a verdict of the jury that they did not act in good faith could not have been sustained by the court, the court below should have answered the second question in the affirmative and have instructed the jury to return a verdict for the defendant.

The judgment below, therefore, must be reversed, and the case must be remanded to the court below for a new trial.