## NEW YORK & PORTO RICO S. S. CO. v. GARCIA.

(Circuit Court of Appeals, First Circuit. December 18, 1926.)

No. 1934.

1. **Trial** ⊕⇒420—Exception to denial of motion for directed verdict at close of plaintiff's case, not renewed at close of evidence, was waived.

Exception to denial of defendant's motion for directed verdict at close of plaintiff's evidence was waived, where motion was not renewed at close of all the evidence.

2. **Action** ⊕⇒48(1)—**Pleading** ⊕⇒369(1)— Cause for breach of contract of transportation held improperly joined with one for slander; at least election was necessary.

Cause of action against steamship company for breach of contract in refusing to transport plaintiff after passage was paid *held* improperly joined in complaint with cause of action for slander, and in any event plaintiff should have been required to elect on which cause she would proceed before going to trial.

**3. Shipping ☞165—$4,900 damages for steamship company's breach of contract of passage held clearly excessive, and result of passion and prejudice.**

Verdict awarding plaintiff damages of $4,900 against steamship company for breach of contract to transport plaintiff from Porto Rico to New York after she had paid passage *held* clearly excessive, and result of passion and prejudice.

**4. Libel and slander ☞44(1)—Communication by person respecting matter in which he has interest or duty to one having corresponding interest or duty is privileged.**

Communication by person having interest or duty, moral or legal, in respect thereto, to person having corresponding interest or duty, is privileged, though it contains matter otherwise actionable, particularly if communication is incidental to business relation between parties.

**5. Libel and slander ☞51(1)—False utterance may be privileged, and not actionable, if made without malice, in belief of its truth.**

Utterance, though false, may be privileged, and, if made in honest belief that it is true and without malice, is not actionable.

**6. Libel and slander ☞101(4)—That communication is privileged rebuts presumption of malice, and burden is on plaintiff to show actual malice.**

That communication is privileged rebuts presumption or inference of malice, and casts burden on plaintiff to prove malice in fact.

**7. Libel and slander ☞44(1)—To be privileged, communication by person having duty to communicate need not be in response to inquiry by plaintiff.**

It is not necessary to make communication privileged that it should have been in response to inquiry by plaintiff, but it is enough that it was made by one having duty to perform to a person or persons having a like interest or duty in subject-matter of communication.

**8. Libel and slander ☞41—That third persons accidentally hear privileged communication does not alone destroy privilege.**

That third persons not legally interested in privileged communications are accidentally present and hear it will not alone take case out of privilege, if it unavoidably happened in usual course of business.

**9. Libel and slander ☞44(1)—Statement by steamship company's physician to plaintiff as to reason why passage was refused held privileged.**

Where steamship company refused to transport plaintiff, an alien, who paid passage from Porto Rico to New York, because public health service tests showed her to be afflicted with venereal disease, it was duty of company's physician to inform plaintiff of reason, and communication was not actionable, if others were present in usual course of business.

**10. Libel and slander ☞124(6)—Instruction that malice is conclusively presumed when utterance is actionable per se was improper, where communication was privileged.**

Where communication was privileged, instruction that legal malice is conclusively presumed when words uttered are actionable per se was improper.

**11. Appeal and error ☞1050(1)—Libel and slander ☞103—Testimony as to plaintiff's reputation, rumors, and witness' statements to his wife, resulting from defamatory utterance, held incompetent and prejudicial.**

In action for slander, testimony as to plaintiff's reputation, as to rumors alleged to have been started by defamatory statement and as to what witness told his wife in consequence of rumors, *held* incompetent and prejudicial.

In Error to the District Court of the United States for the District of Porto Rico; Wells, Judge.

Action by Dolores Carmoega Garcia against the New York & Porto Rico Steamship Company. Judgment for plaintiff, and defendant brings error. Judgment vacated, verdict set aside, and case remanded.

Van Vechten Veeder, of New York City (Charles Hartzell, Daniel F. Kelley, and Hartzell, Kelley & Hartzell, all of San Juan, Porto Rico, on the brief), for plaintiff in error.

Cay Colly Cuchi and R. Castro Fernandez, both of San Juan, Porto Rico, for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. According to the plaintiff's complaint, the first cause of action is for a breach of contract alleged to have been entered into on or about the 12th day of May, 1924, by which the defendant steamship company agreed to transport the plaintiff from San Juan to New York on its steamer San Juan, due to leave the first-mentioned port on or about the 4th day of June, 1924, for the sum of $55; that the plaintiff paid the defendant said sum; that the only condition imposed by the contract upon the plaintiff was that she should be in a healthy condition to embark; that, notwithstanding she was at the time in a perfectly healthy condition, the defendant refused to comply with the contract and to transport her to New York, returning to the plaintiff the passage money paid by her to the defendant; and that by virtue of said refusal the plaintiff has suffered damages in the sum of $5,000.

This cause of action, in its sixth paragraph, also contained a further allegation, which it is unnecessary to state. It had no relation to the cause, and should have been stricken out, as requested, for it could have no other effect, and apparently was inserted for no other purpose, than to prejudice the defendant in the minds of the jury.

The second cause of action is for slander. It is there alleged that the plaintiff's occupation and principal means of livelihood was that of a chaperon for ladies in respectable families in Porto Rico, and assisting them in the management of their homes and in needlework; that on the 12th day of June, 1924, Dr. George, the physician on the defendant's steamer Ponce and an employee of the defendant, while acting pursuant to his duties as such employee, said to the plaintiff, in the presence of Miss Maria Teresa Lopez and several other persons present, who could hear and heard what was said, the following words: "You cannot embark because you suffer from a contagious venereal disease;" that said words were false, scandalous, and defamatory; that they reached the ears of the employees of the immigration department of Porto Rico, and caused it to refuse her permission to embark; that the alleged acts of Dr. George were ratified by the defendant; that by reason of said slanderous words the plaintiff was unable to embark for the United States, though having sold her furniture and incurred the necessary expenses for so doing; that she has been damaged in her business and reputation; that she has lost the confidence of her friends; that she is looked upon as a despicable thing; that all persons who heard the statements evade her and fear contagion; and that she has suffered greatly by reason of such calumny, causing damage to her in the sum of $25,000.

The prayer of the complaint is that she be awarded the sum of $30,000 in addition to the costs and attorney's fees in the case.

A demurrer to the complaint, on the ground that it did not state a cause of action, was overruled, subject to exception, and the defendant answered. The answer to the first cause of action was a general denial. The answer to the second cause was in substance a general denial and a special defense, to the effect that Dr. George uttered the words or gave the information complained of only to the plaintiff, and because of her earnest and repeated solicitation to know why the defendant would not transport her to New York, and that said information was a privileged communication, given without malice. As a further matter of defense it was alleged that the plaintiff was an alien at the time in question, and that under the immigration laws of the United States it was made unlawful for it to transport to the United States from an insular possession an alien afflicted with a loathsome or contagious disease; that in compliance with said law and with her consent she was examined by Dr. William Charles

Willis; that a smear of the urethral discharge taken from her by said Willis at the examination, when subjected to a microscopic test by the United States Public Health Service at San Juan, disclosed the presence of a venereal disease; and that nothing was said by Dr. George to the plaintiff until after the United States Public Health Service reported to the defendant the result of its microscopic examination.

A trial having been had, the jury found a general verdict for the plaintiff, and assessed damages in the sum of $4,900, costs, and attorney's fees. Thereafter the defendant seasonably presented a motion for a new trial, assigning as grounds therefor (1) that the damages were excessive and in such an amount as to indicate that the jury was actuated by passion and prejudice; (2) that they were excessive, because there was no evidence submitted of malice; (3) that the verdict was against the law, in that the evidence showed that the slanderous words alleged to have been uttered were induced by and given at the request of the plaintiff and were a privileged communication; that whether, the communication was privileged was a question for the court, and not the jury; and (4) that, the verdict being general, it could not be said that it was based on the second cause of action rather than the first; that as applied to the first the damages were clearly excessive, as no damages were proved under that cause; and that, if the verdict was based on the second cause of action, the publication complained of was induced by the plaintiff and was privileged. This motion was denied, subject to exception.

[1] During the course of the trial exceptions were taken to the admission of evidence and to instructions to the jury. There was also an exception taken to the denial of the defendant's motion for a directed verdict at the close of the plaintiff's evidence; but, as this motion was not renewed at the close of all the evidence, it was waived.

In its assignments of error the defendant complains that the court erred (1) in denying its motion to strike out paragraph six of the first cause of action; (2) in overruling its demurrer; (3) in overruling its motion for a new trial; (4) in giving certain instructions to the jury to which it excepted; and (5) in the admission of certain testimony.

[2, 3] We do not find it necessary to pass upon all the assignments of error, for we think the judgment must be vacated and the verdict set aside. The causes of action set out in the complaint are distinct and independent, and should not have been joined. They cannot

be regarded as counts in a declaration, each stating the same cause of action, but with slight modifications, for they are not such. One is for the breach of a contract, and the other for uttering slanderous words days after the contract is said to have been made and broken. If there could have been any justification for setting out the two causes of action in the complaint, there was every reason, before going to trial, for requiring the plaintiff to elect upon which cause she would proceed, for otherwise the defendant could hardly be expected to have a fair trial. To add to the difficulties, the jury returned a general verdict, and, such being the case, it cannot be said whether the verdict was based upon the action of contract or the action for slander. Maryland v. Baldwin, 112 U. S. 490, 493, 5 S. Ct. 278, 28 L. Ed. 822. The charge of the court gave the jury no light as to its duty in the premises. If the verdict was based on the first cause of action, as it may have been, the award of damages, $4,900, was plainly excessive and manifestly the result of passion and prejudice, for there was no evidence of actual damages suffered by reason of the breach of contract, if there was a breach. Even the passage money which the plaintiff had paid, according to the allegations of the first cause and her own testimony, was returned to her before this suit was brought.

Then, again, the court in its charge to the jury did not state the issues raised by the pleadings in the two causes, so that it could intelligently perform its duties and know what facts were necessary to be found to authorize a verdict for the plaintiff as to either cause, but simply told the jury that the plaintiff had the burden of proving her case, "as set up in her complaint," and without saying anything about the issues presented by the defendant's answer. The essential issues of fact not having been called to the attention of the jury in the charge, it was scarcely possible for it to understand the legal instructions given and apply them with any degree of intelligence. The instructions given consisted of a series of disjointed requests made by counsel, without reference to the facts or to each other, and likewise tended to confuse and mislead. Among the instructions was the following: "It is universally held that in actions for defamation, when the words uttered are actionable per se, malice in law is conclusively presumed." This instruction was excepted to and assigned as error. The contention is that it was not applicable to the issues raised by the pleadings and disclosed by the evidence; that the pleadings and evidence showed that the alleged slanderous communication was priv-

16 F.(2d)—47

ileged, and that, where such is the case, the defamatory words are not actionable, in the absence of proof that they were actuated by malice; that, when a communication is privileged, the prima facie presumption or inference of malice ordinarily attending a publication of defamatory words is overcome, and the burden is cast upon the plaintiff of establishing malice in fact.

In King v. Patterson, 49 N. J. Law, 419, 9 A. 705, 60 Am. Rep. 622, the court in discussing this matter said:

"Defamatory words uttered in a privileged communication are not actionable unless there be proof of actual malice. If such words are uttered bona fide, on a privileged occasion, in an honest belief that they are true, the party injured is remediless. Spill v. Maule, L. R. 4 Exch. 232; Clark v. Molyneux, 3 Q. B. Div. 237. A wrong or malicious motive is essential to the action, where the communication is privileged. On the other hand, where the publication imputes a crime, so as to be actionable per se, or is actionable only on averment and proof of special damages, if the publication is not justified by proof of its truth, or by the privileged occasion of publication, the law conclusively presumes malice such as is essential to the action. In such cases good faith and an honest belief in the truth of the publication will be no defense. The absence of a malicious motive may protect against exemplary damages, but will not bar the action. In a legal sense, malice, as an ingredient of actions for slander or libel, signifies nothing more than a wrongful act done intentionally, without just cause or excuse. Cooley on Torts, 209, and note. A defamatory publication, under the pretext of a privileged communication, where the privilege does not exist, is a publication without just cause or excuse, and in a legal sense malicious, and therefore actionable, though it be made without a malicious motive. The burden of proving that the occasion of publication was privileged is on the defendant. The issue whether the words were published from a malicious motive, so as to take from them the protection of the occasion, arises only when it has been shown that the occasion of speaking or publishing is one that is privileged. Where the occasion is privileged it is for the plaintiff to establish that the statements complained of were made from an indirect or improper motive, and not for a reason which would otherwise render them privileged. Clark v. Molyneux, supra; Pollock on Torts, 227, 234. * * * The occasions which give rise to the privilege of speaking or publishing words which otherwise would be

defamatory and actionable are various. Thus, memorials to officers of state respecting the conduct of magistrates and officers, comments by electors upon the character of candidates for office, communications in matters of public interest in which the public generally is concerned, communications in the interest of third persons or for the protection of the party's own interest, communications respecting the character of servants or the credit and responsibility of tradesmen, or made in the performance of social, moral, or legal duties, come within the class of privileged communications."

See, also, Kruse v. Rabe, 80 N. J. Law, 378, 79 A. 316, 33 L. R. A. (N. S.) 469, Ann. Cas. 1912A, 477; Rothholz v. Dunkle, 53 N. J. Law, 438, 22 A. 193, 13 L. R. A. 655, 26 Am. St. Rep. 432; Moore v. Butler, 48 N. H. 161; Fahr v. Hayes, 50 N. J. Law, 275, 278, 13 A. 261; Quinones v. J. T. Silver Banking & Commercial Co., 16 Porto Rico 661; 17 R. C. L. p. 341, secs. 88, 89, 90; Newell, Slander and Libel (4th Ed.) 380, 381.

[4-8] From the foregoing authorities it appears that a communication of any matter in which the person making the communication has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, even though it contains matter which without this privilege would be actionable, and although the duty is a moral and not a legal one, and particularly where, as here, the communication arises out of and is incidental to a business relation between the parties; that an utterance, though false, may be thus privileged, and if made in the honest belief that it is true and from no malicious motive, is not actionable; that the occasion on which such a communication is made rebuts the presumption or inference of malice and casts the burden upon the plaintiff to prove that there was malice in fact; that it was not necessary in order to render the communication privileged, that it should have been in response to an inquiry made by the plaintiff; it is enough that it was made by one having a duty to perform to a person or persons having a like interest or duty in the subject-matter of the communication; and that the mere fact that third persons not legally interested in the communication are accidentally present and hear it, will not alone take the case out of the privilege if it were unavoidable or happened in the usual course of business affairs. Kruse v. Rabe, supra; Odgers on Libel & Slander, p. 245; 17 R. C. L. p. 344, § 90.

[9] The pleadings and evidence in this case disclose that the communication complained of was made by Dr. George at the office of the steamship company under the following circumstances: That the plaintiff and her niece were aliens; that in the latter part of May, 1924, they sought to engage transportation with the defendant from Porto Rico to New York on its steamer San Juan, leaving Porto Rico on or about June 4; that being an alien the plaintiff could not enter the United States if she was afflicted with a loathsome or contagious disease; that the defendant, therefore, would not transport her to New York unless she was first examined by its doctor and found in a healthy condition; that on June 3, 1924, the plaintiff and her niece appeared and were examined by Dr. Willis, the defendant's doctor on its steamship San Juan that was to sail the following day; that a smear of her urethral discharge taken at that examination and subjected to a microscopic test in the laboratory of the United States Department of Public Health of Porto Rico, disclosed that she was afflicted with a venereal disease; that because of this she was informed that she was sick and could not sail June 4th on the San Juan; that being much displeased at this she went to see the defendant's manager, Mr. Nadal, who paid her back her passage money and told her that the steamship Ponce would be in on the 12th of June; that she could be re-examined by the doctor on that ship; that on the 12th of June the plaintiff and her niece went to the steamship Ponce to be examined; that at that time, according to the plaintiff's testimony, Dr. George, the doctor on the Ponce, examined her eyes, mouth, nose, and chest, but did not attempt the kind of examination made by Dr. Willis; that according to the doctor's testimony, no examination was made at that time, because the plaintiff presented to him a certificate from Dr. Artau, certifying that she and her niece were in "perfectly good health," and that in consequence of this, and not then being aware of the examination made by Doctor Willis, he issued to the plaintiff and her niece cards certifying that they were in good physical condition, free from contagious disease; that the plaintiff and her niece, having obtained these cards, proceeded to the immigration authorities to procure the necessary papers to embark; that the immigration authorities declined to issue the papers, requesting them to return the next day; that the plaintiff, being vexed at this, proceeded at once to the office of the steamship company to find out the cause; that, shortly after giving the cards to the plaintiff and her niece, Dr. George received notice from Lugo Vina, passenger clerk at the office of the steamship company, not to issue any

cards to aliens until after seeing him; that shortly thereafter Dr. George went to the office of the steamship company and found the plaintiff and her niece there with Mr. Lugo Vina, the passenger clerk; that Vina showed him the certificate from the board of health, calling his attention to what the microscopic examination disclosed, and learning from Vina that the plaintiff desired to know why she could not sail he undertook to inform her; that he did not speak Spanish; that the best he could do was to show the plaintiff the board of health's certificate, which was in her own language; that the plaintiff's version as to this was that, being vexed, she and her niece went to the office of the steamship company, and while there Dr. George came, and, after speaking to an employee, asked her for her card; that she refused to give him the card, and asked why she should give it to him; that thereupon he said, "Madame, you cannot sail, because you are suffering from a contagious disease—a venereal disease;" and that this took place in the office, where there were a number of people within hearing distance. But neither the plaintiff's niece, though called as a witness, nor any one else beside the plaintiff, testified to having heard the words, if they were spoken, and she was not shown the certificate from the board of health instead.

Whichever version of the evidence is the correct one, and independent of the plaintiff's request for the information, we think it was clearly Dr. George's duty, due to the business relation existing between the parties, to inform her why she could not sail; that the plaintiff had a corresponding interest in the performance of that duty; and that, if any bystanders chanced to be present, their presence there happened in the usual course of business affairs, and was not due to any contrivance on the part of the defendant or Dr. George.

[10] Such being the case, we regard the occasion as privileged, and are of the opinion that the instruction complained of should not have been given, as it was inapplicable to the facts in this case, misleading, and improper.

[11] A witness was allowed to testify subject to exception that the plaintiff's reputation for morality in the community where she lived was excellent; that during the month of June, 1924, he heard rumors that she was not permitted to sail on a ship sailing from San Juan to New York because she had a venereal disease, but he did not remember whether he heard that in the casino or where; but it came to his ears, and the first thing he did was to tell his wife to avoid any relation with this lady, because of the rumors which had reached him, and also because later he had read something about the case in the papers; that he prohibited his wife from having any social relations with her. This evidence was clearly incompetent. The plaintiff's reputation was not in issue, either in the action for breach of contract or the one for slander, and the balance of the testimony which the witness was allowed to give related to vague rumors which he had heard and what he told his wife in consequence to the rumors. It was all incompetent and exceedingly prejudicial, and should have been excluded.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the plaintiff in error.