### SOUTHERN RY. CO. v. WALTERS. *
#### No. 8879.

Circuit Court of Appeals, Eighth Circuit.
Feb. 14, 1931.

Rehearing Denied March 18, 1931.

---

*Certiorari granted 51 S. Ct. 495, 75 L. Ed. ——.

Bruce A. Campbell, of East St. Louis, Ill. (Edward C. Kramer, Rudolph J. Kramer, and R. Emmett Costello, all of East St. Louis, Ill., and Samuel B. McPheeters, of St. Louis, Mo., on the brief), for appellant.

Charles A. Lich, of St. Louis, Mo. (Louis E. Miller, of St. Louis, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

GARDNER, Circuit Judge.

This is an action in which the appellee, a minor, brought suit against the appellant to recover damages for personal injuries. The parties will be referred to as they appeared in the lower court.

At the time of receiving his injuries, the plaintiff was a boy about six years old, attending the public schools in East St. Louis, Ill. The schoolhouse at which he was attending was located on the south side of what is referred to as Bond avenue, a street running east and west. At a point about one hundred feet east of the schoolhouse Bond avenue is intersected at right angles by two tracks of the defendant company, passing north and south. It was alleged in plaintiff's petition that on the 3d day of March, 1927, he was walking from the schoolhouse in an easterly direction across the tracks of the defendant company where they cross Bond avenue, and that while so doing the defendant ran a northbound train over and along its tracks and across Bond avenue, striking him as he was in the act of crossing these tracks, and so injuring him that it was necessary to amputate his right leg and part of his left foot. It was alleged that these injuries resulted from the carelessness of the defendant, in that it ran and operated its train on the tracks across Bond avenue at the time in question without sounding any warning bell or signal of the approach of the train, and that it ran and operated its train over said tracks at this crossing without coming to a stop and flagging the crossing, as required by an order entered by the Illinois Commerce Commission requiring it to protect this crossing by stopping all trains before passing over it, and requiring one of the crew of the train to flag the crossing and warn all persons attempting to cross the crossing of the approach of the train. There were other allegations of negligence, but, in view of the instructions of the court, they are not material. The answer was a general denial.

At the close of all the evidence, the defendant interposed a motion for a directed verdict, which the court overruled, and the jury returned a verdict in favor of the plaintiff for $43,000. On motion for a new trial, the court held this verdict excessive, and announced that the motion for new trial would be sustained, unless within ten days the plaintiff should enter a remittitur of $15,000. The plaintiff elected to remit the $15,000, and thereupon judgment was entered for $28,000, and the motion for new trial was overruled.

On this appeal it is urged: (1) That the court erred in denying defendant's motion for a directed verdict interposed at the close of all the testimony; (2) that the court erred in not granting its motion for a new trial; (3) that the verdict, even after remittitur, was excessive; and (4) that the court erred in certain rulings as to the admissibility of evidence.

The court, in its charge to the jury, withdrew from the consideration of the jury all the allegations of negligence charged in the petition, except the allegation with reference to the order of the Illinois Commerce Commission under date of August 20, 1926, requiring trains, upon passing over this crossing, to come to a stop, and requiring one of

the crew to flag the crossing and to warn all persons attempting to cross of the approach of the train.

Accepting the defendant's request for a directed verdict as a sufficient challenge to the sufficiency of the evidence, the question presented to the court on appeal is whether or not there was substantial evidence to sustain the verdict. Atchison, T. & S. F. Ry. Co. v. Condos (C. C. A.) 30 F.(2d) 669; Flannery v. Willcuts (C. C. A.) 25 F.(2d) 951; Concordia Fire Ins. Co. v. Commercial Bank (C. C. A.) 39 F.(2d) 826; Hardy-Burlingham Mining Co. v. Baker (C. C. A.) 10 F.(2d) 277; Security Life Ins. Co. v. Brimmer (C. C. A.) 36 F.(2d) 176; Michigan Central R. R. Co. v. Mix, 278 U. S. 492, 49 S. Ct. 207, 73 L. Ed. 470; Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879.

In its instructions, which are not excepted to by the appellant, the court advised the jury that:

"If the defendant stopped that train, and flagged it across, you ought to find for defendant. If defendant did not stop it and flag it across, you ought to find for the plaintiff. You cannot, of course, find for plaintiff unless defendant was guilty of that act of negligence. Whatever else it may have omitted to do, or whatever else it may have done, would not warrant you in finding for plaintiff. You can only find for plaintiff if you find that defendant was guilty of the single act of negligence that I have called your attention to. If it was, then, I repeat, you ought to find for plaintiff; if it was not, you ought to find for defendant."

In other portions of the instructions the court told the jury in effect that the order made by the Illinois Commerce Commission required the stopping of the train and the flagging of this crossing, and specifically told the jury that the question of the compliance with this order by the defendant was decisive of the case, saying: "Did it comply? If it did, find for the defendant; if it did not, find for the plaintiff."

It is observed that the court by these instructions took from the jury all allegations of negligence with reference to the speed of the train and the alleged failure to blow a whistle, and, on the other hand, in effect told the jury that the plaintiff had in fact been struck by the train and injured at this crossing; thus limiting the issue to a single question. It will therefore serve no useful purpose to review the evidence which tends to prove that the plaintiff was struck and injured by this train.

It appears from substantial evidence that the accident occurred about 3 o'clock p. m. on March 3, 1927. The plaintiff, with four other boys, started to cross the tracks of the defendant at this crossing. The other four boys ran across the track ahead of the engine without mishap, but the plaintiff, in attempting to pass in front of the engine, was struck by some part of it and seriously injured.

Going directly to the evidence on the issue submitted to the jury, we need refer, of course, only to the testimony produced by the plaintiff, or that tended to sustain the verdict, and we must assume, in view of the verdict, that it was believed by the jury. We are not here concerned with the question of the credibility of the witnesses nor the weight of the testimony.

John Luscomb, the engineer in charge of the train, testified that it would require from three to five minutes running time in order to build up a speed of from five to six miles an hour from a dead stop. The witness John McKenzie testified that he was driving his automobile and tried to go up several streets but was cut off by this train, and that the train was moving and he tried to get around it; that Tenth street runs right off of the Free bridge, across which he came, practically parallel with the defendant's tracks, and that as he left the bridge he drove north on Tenth street; that there were three or four streets running east and west from Tenth street at that place crossing defendant's tracks, and that he intended to turn west down the first street, but observed this train moving north; that upon reaching the next street he still observed the train moving north; passing to the next street he looked west, and observed the train moving, and, when he reached the next street, which was Bond avenue, he turned west into that street, and observed the hind end of the engine as it was just crossing Bond avenue; that, as he drove up on Bond avenue to the train, a distance of less than two blocks, he saw the plaintiff lying in the street on the opposite side of the train; that, when he arrived, about ten or fifteen cars had passed over the intersection, and the train was moving at a rate of fifteen miles an hour. He testified that the train was moving at all times after he first observed it when he attempted to turn west at the first street after leaving Free bridge, and that it never stopped at any time after he first observed it until it had passed over the Bond avenue crossing;

that, when he first turned west onto Bond avenue, the hind end of the engine had just crossed that street.

The witness Thomas Heher testified that he had stopped at a filling station near this crossing; that his attention was attracted by the scream of a woman, and that he saw this boy under the train; that he was familiar with the speed of moving vehicles, and that he estimated the speed of the train at that time at ten miles an hour. The witness Benjamin F. Ward, who was operating a filling station about seventy-five feet from where the accident occurred, testified that, upon hearing the scream of a woman, he looked in that direction, and observed that the engine and one or two cars had passed over the crossing, and that the train was moving at a rate of between twelve and fifteen miles an hour, that he did not observe the train stop at any time, and that the injured boy was lying near the west side of the track, about six and a half feet from the sidewalk on Bond Avenue.

The plaintiff testified that he had been going to this school for about two or three weeks before the accident; that he lived east of the railroad tracks, and that in going to and from school he had to cross over the railroad track; that at the time of his injury he and some other boys were going home from school, and that the other boys were running, but he was walking, and that he did not see the train before he started across the tracks; that when he first saw the train it was about half a block away.

Corda Pettit testified that she and Mrs. Odell drove up on Tenth street, and were stopped by the train on this crossing, and that looking under the car they saw the plaintiff; that they were driving west on Bond avenue while the train was moving north across the avenue; that she did not observe the train stop nor hear the sound of a whistle. She was asked on cross-examination with reference to the train stopping:

"Q. Do you know whether it stopped at Bond Avenue, or not? A. I am sure it did not.

"Q. I am not asking you that. Do you know whether it did or not? A. I am sure it didn't."

Being asked upon cross-examination why she testified that the train did not stop, she said: "Well, it seemed like I would have noticed it halting there, if it had."

Mrs. Odell, who was with Mrs. Pettit in the car, testified to the incident of being stopped on this crossing and seeing the little boy lying in the street with his limb cut off; that as she approached the crossing she observed the train coming, moving north. She testified as follows:

"Q. Where were you when you observed the train coming? A. I was almost to Eighth Street, on Bond Avenue.

"Q. At that time were you able to observe the engine of that train? A. Yes, sir.

"Q. Which direction was it moving in? A. It was going north.

"Q. And as it crossed Bond Avenue, going north, can you state whether or not there were any cars attached to it? A. Yes, sir; lots of them.

"Q. Now, when you observed this train and this engine with the string of cars attached, going north across Bond Avenue, what did you do then? A. I stopped. * * *

"Q. As you approached this railroad crossing, I will ask you whether or not you saw any men on any part of the engine or tender. A. I never did.

"Q. After the cars had passed over, what did you do? A. As soon as I—almost as soon as I stopped, possibly a second or two afterwards, I noticed a child, and I jumped out and ran to him, and then I ran back and called an ambulance."

On cross-examination she testified:

"Q. Yes, before you ever saw the boy. A. Before I saw the child the engine and possibly two or three cars had passed over. When I first saw the train it was about seventy-five or a hundred feet from the crossing.

"Q. When you say 'from the crossing,' which direction was it from the crossing? A. It was south from the crossing, going north.

"Q. It had not reached Bond Avenue? A. No, it had not. It was about seventy-five or a hundred feet.

"Q. South of Bond Avenue when you first saw it? A. Yes, sir.

"Q. Did you see the boy at that time? A. No, sir; I never. I was not looking in that direction. I was looking toward the train."

James Goodwin testified that he was leaning against a post, and saw four boys start across the tracks, all of whom were running, except the plaintiff, and that, as plaintiff was crossing the track, the train hit him and threw him back; that he heard no bell or whistle sounded; that the three boys who ran got across the track ahead of the train. Ruth Sheeley testified that she saw some boys who had just gotten out of school coming along

Bond avenue; that the train was coming, and that about three or four of the boys got across the track, but that the plaintiff did not; that he was hit by the engine and knocked on the track, and a man came along and picked him up and dragged him out from under the train.

There was a great deal of other testimony both as to the accident and as to the surrounding facts and circumstances. The testimony as to the failure to stop the train and flag the crossing was, it is true, directly in conflict with that produced by the defendant. The defendant's engineer testified that it would require from three to five minutes running time in order to build up a speed of five or six miles an hour from a dead stop, under the conditions as they prevailed at the place of this accident. The evidence of the plaintiff showed that, as the engine crossed this crossing, or immediately thereafter, it was going at a speed of from ten to fifteen miles an hour. This was a circumstance surely tending to prove that the train had not stopped at this crossing, and there was direct testimony to the effect that it had not stopped. The testimony of the defendant to the effect that two men were standing on the footboards of the engine, and that the train stopped and one of these men flagged the crossing, need not have been believed by the jury, especially in view of the fact that neither of these men seem to have seen any of these little boys, and the physical fact shows that this boy was struck by this train at this crossing. Where the evidence is of such a character that reasonable men may reach different conclusions, the case should be submitted to the jury. Mutual Life Ins. Co. v. Hatten (C. C. A.) 17 F.(2d) 889; Crookston Lbr. Co. v. Boutin (C. C. A.) 149 F. 680; United States Can Co. v. Ryan (C. C. A.) 39 F.(2d) 445; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 233, 74 L. Ed. 720.

In Gunning v. Cooley, supra, the Supreme Court said:

"And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them."

We are of the view that there was substantial evidence to sustain the verdict.

It is seriously urged that the court erred in denying defendant's motion for a new trial. This court has often held that a motion for a new trial on the ground that the verdict is not sustained by the evidence is addressed to the discretion of the trial court, and its ruling thereon will not be reviewed on appeal. Yellow Cab Co. v. Earle (C. C. A.) 275 F. 928; Chicago, M. & St. P. Ry. Co. v. Heil (C. C. A.) 154 F. 626; Southern Surety Co. v. United States (C. C. A.) 23 F.(2d) 55; Cudahy Packing Co. v. City of Omaha (C. C. A.) 24 F.(2d) 3; Chicago, B. & Q. R. Co. v. Conway (C. C. A.) 29 F.(2d) 551. This is not a case in which the lower court arbitrarily refused to consider the motion for a new trial, but it appears from the record that, after very careful and thoughtful consideration of the motion, the court denied the same. Neither will this court review the question of the amount of the verdict. United States Can Co. v. Ryan (C. C. A.) 39 F.(2d) 445; Sun Oil Co. v. Rhodes (C. C. A.) 15 F.(2d) 790; Public Utilities Corp. of Arkansas v. McNaughton (C. C. A.) 39 F.(2d) 7; Detroit Taxicab & Transfer Co. v. Pratt (C. C. A.) 2 F.(2d) 193; Lincoln v. Power, 151 U. S. 436, 14 S. Ct. 387, 38 L. Ed. 224; New York, L. E. & W. R. Co. v. Winter, 143 U. S. 60, 12 S. Ct. 356, 36 L. Ed. 71.

It is urged in the assignments of error that the court erred in certain rulings on evidence. We have examined these rulings, and the questions raised are so trivial as not to warrant review. If any errors were committed in the rulings questioned, they were certainly not prejudicial. They were not presented on oral argument, and no authorities are cited in the brief in support of the contention of counsel, and we must assume that none exist. The record indicates that the lower court vigilantly protected the rights of the defendant in the trial of this action, and that no errors were committed to its prejudice.

The judgment is therefore affirmed.