MONTGOMERY WARD & CO. v. WATSON.
SAME v. JAMISON.
Nos. 3231, 3232.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

Arthur F. Kingdon, of Bluefield, W. Va. (Silas H. Strawn and C. B. Fullerton, both of Chicago, Ill., on the brief), for appellant.

A. J. Lubliner, of Bluefield, W. Va., and John Kee, of Bluefield, W. Va., for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

These are appeals in two actions to recover damages for slander instituted in the circuit court of Mercer county, W. Va., and removed by the defendant into the court below. The plaintiffs were former employees of Montgomery Ward & Co., and that corporation was defendant. The slander alleged was a charge of stealing made by the local manager of the defendant against the plaintiffs. The declaration in each of the cases alleged also a cause of action under the "Insulting Words" statute of West Virginia, chapter 55, art. 7, § 2 of the West Virginia Code 1931. The cases were tried together in the court below, and were heard together in this court on appeal. The jury returned a verdict for the plaintiff in each case in the sum of $10,000, which, however, was reduced by the trial judge to $5,000. There are a number of assignments of error; but, as we are of opinion that in each case the prayer of defendant for a directed verdict should have been granted, we need consider only the question as to the sufficiency of the evidence to carry the case to the jury.

The facts may be briefly stated: The plaintiffs were employed by defendant in its store at Bluefield, W. Va.; the plaintiff Jamison being the brother-in-law of the plaintiff Mrs. Watson. The manager of the store at

the time was one Niehaus, and, on March 24, 1931, he received information which led him to believe that plaintiffs were attempting to steal some men's shirts belonging to defendant, and he thereupon questioned them with regard to the matter and discharged them. The conversations with regard thereto were had in the defendant's office in the presence and hearing of a young lady office manager. An elevator boy claims to have overheard a part of the conversation with Mrs. Watson.

The plaintiffs deny that they were attempting to steal the shirts. According to their version of the matter, Mrs. Watson wrapped up three shirts and laid them aside for a man named Turner, who promised to return later in the day and take and pay for them. Shortly thereafter Jamison purchased a shirt from her, and she wrapped it up also and laid it with the three shirts of Turner. While she was waiting on another customer, Niehaus took the package containing the three shirts and the ticket showing the sale of one shirt to Jamison and carried them to the office. Mrs. Watson saw him do this; and, after she had finished waiting on the customer, she went to the office and made inquiry as to his action, whereupon he accused her of attempting to steal the extra shirts and smuggle them out through Jamison. He later interviewed Jamison relative to the matter, and accused him of being implicated with her in an attempt to steal the shirts. According to her testimony, Niehaus used profane language in making the accusation against her, asking her "what in the G—— d—— h——" she meant in trying to steal and smuggle out the company's goods through Jamison, and telling her that the statement that she had wrapped the shirts up for another man was "a G—— d—— lie." The elevator boy testified to hearing profane language; his version, however, being that Niehaus told Mrs. Watson that her story was "too G—— d—— thin."

Defendant introduced Niehaus, who denied using the profane language and denied accusing plaintiffs of stealing, but admitted questioning them with regard to the shirts and paying them off and discharging them from employment pending further investigation. He testified that the office manager called his attention to a ticket's having come into the office showing a sale of only one shirt to Jamison, and stated that she had seen Jamison take three shirts and hand them to Mrs. Watson as if to make a purchase; that he looked over the balcony and saw Mrs. Watson finish wrapping up the shirts and put the package under the counter; that he then went to the counter, got the package, and carried it to the office; that the package contained three shirts, and attached to it was a ticket showing the sale of only one shirt to Jamison. He testified that he then found Jamison and asked him whether he had purchased a shirt, and that Jamison replied that he had, and, upon further questioning stated that he had purchased a white one; that, when he returned to the office, he found Mrs. Watson, who asked him whether he got the package containing three shirts from under the counter, stating that a customer had bought the three shirts; that Jamison had bought one shirt, and that she had put his ticket on the wrong package; that she then handed him a package containing one shirt, which, upon opening, he found to contain a blue shirt; that, after questioning Mrs. Watson and Jamison, he paid them off and let them go, telling them that he would have to investigate the matter. The office manager testified to seeing Jamison give the three shirts to Mrs. Watson and to seeing her wrap them up, to receiving a ticket showing the sale of only one shirt, and to seeing Mrs. Watson place the duplicate ticket on the package which she had wrapped up containing the three shirts.

There was no extrinsic evidence of any malice or ill will on the part of Niehaus against either of the plaintiffs or of any effort on his part to accomplish any ulterior purpose in making the charges against them. On the contrary, the uncontradicted evidence is that he had raised the wages of Mrs. Watson shortly prior to the occurrence, and that he had retained Jamison in the service of the company, notwithstanding a shortage in his department, and notwithstanding certain suspicious circumstances which had arisen some weeks before with reference to the sale of an automobile tire.

While there is much conflict both in the testimony and in the inferences to be drawn therefrom, we must view it in the light most favorable to plaintiffs in considering a motion for a directed verdict for defendant; and, when so viewed, there can be no question but that the language used charged the plaintiffs with dishonesty, and that, in the absence of privilege, it would be sufficient to carry the case to the jury. On the other hand, it is equally clear that, if the occasion was privileged, the defendant may not be held accountable in damages for the language used, unless the publication exceeded that which the occasion justified or unless Niehaus, in making the charge, was actuated by express malice.

Three questions, therefore, are presented for our consideration: (1) As to whether the occasion was privileged; (2) as to whether the publication exceeded that which the occasion justified; and (3) as to whether there was evidence of express malice sufficient to take the case to the jury, notwithstanding the privilege. We think that all of these questions must be answered in favor of the defendant.

As to the first question, there can be no doubt but that the occasion was one of qualified privilege. Such privilege exists with respect to a statement where it concerns a matter as to which the person making it has a bona fide duty or interest and is made in good faith in the performance of the duty or the protection of the interest to a person having a corresponding duty or interest with relation thereto. Newell on Slander and Libel (4th Ed.) § 389; 17 R. C. L. 341; White v. Nicholls, 3 How. 266, 286, 11 L. Ed. 591; Wise v. Brotherhood of Locomotive Firemen and Enginemen (C. C. A. 8th) 252 F. 961; New York & Porto Rico S. S. Co. v. Garcia (C. C. A. 1st) 16 F.(2d) 734, 738; Brown v. N. & W. R. Co., 100 Va. 619, 42 S. E. 664, 60 L. R. A. 472. The rule is thus stated by the late Judge Walker in Harrison v. Garrett, 132 N. C. 172, 43 S. E. 594, 596: "This case was tried upon the theory that the communication of Garrett to his employee in Texas (Saunders) was one of qualified privilege, in accordance with the rule that any communication between employer and employee is protected by this privilege, provided it is made bona fide about something in which (1) the speaker or writer has an interest or duty; (2) the hearer or person addressed has a corresponding interest or duty; and provided (3) the statement is made in protection of that interest or in the performance of that duty. There must also be an honest belief in the truth of the statement. When these facts are found to exist, the communication is protected by the law, unless the plaintiff can show malice on the defendant's part; the burden in this respect being upon the plaintiff."

Here it was the duty of Nichaus as local manager of defendant's business to investigate any charge of dishonesty among its employees. He had received information tending to show that plaintiffs were guilty of dishonest conduct; and it was proper that he communicate to them the basis of his suspicions. The right to the enjoyment of the good reputation to which one is entitled should be jealously guarded by the courts, but the protection of this right does not require that an employer be unduly limited or circumscribed in making a bona fide investigation of alleged dishonesty or other misconduct among his employees. It is in the interest of good morals as well as of sound business that such investigations be conducted; and an employer should not be penalized for communications made to his employees supposed to have knowledge of such matters, where they are made in good faith and for the honest purpose of discovering the truth or of protecting the business. As was well said by Judge Epes in the recent case of Chesapeake Ferry Co. v. Hudgins, 155 Va. 874, 156 S. E. 429, 441: "Public policy and the interests of society demand that in cases such as this an employer, or his proper representatives, be permitted to discuss freely with an employee, or his chosen representatives, charges affecting his employment which have been made against the employee to the employer. There is a privilege on such occasions; and a communication made under such circumstances, within the scope of the privilege, without malice in fact, is not actionable, even though the imputation be false, or founded upon erroneous information. The question is not as to the truth or falsity of the communication, or whether the action taken by the defendant with reference thereto or based thereon was right or wrong, but whether the defendant in making the publication acted in good faith or was inspired by malice."

There was no evidence whatever of any such excessive publication as would defeat the defense of privilege. There was no publication at all except to the plaintiffs themselves, who were vitally interested in the matter, and to the office manager, who had furnished the information upon which the investigation was commenced. It is clear that neither her presence nor that of the elevator boy destroyed the privilege of the occasion; for it is well settled that the casual presence of by-standers, who overhear the communication, does not rob the occasion of the protection of privilege. 17 R. C. L. 344; 36 C. J. 1248; Newell on Slander & Libel (4th Ed.) § 394; New York & Porto Rico S. S. Co. v. Garcia, supra; Hartsfield v. Harvey C. Hines Co., 200 N. C. 356, 157 S. E. 16.

Since, therefore, the occasion was privileged and the publication not excessive, plaintiffs are not entitled to recover, unless they can establish actual malice as the motive of the publication. In the case of a publication not privileged of words actionable per se, malice need not be shown, but is im-

plied in law from the publication itself. In the case of a privileged communication, however, express malice as distinguished from malice in law must be shown; that is to say, if the occasion be privileged, the plaintiff may not recover, although he proves that defendant used language actionable per se and that same was false, unless he goes further and shows that in using same defendant was moved by actual malice, such as ill will, spite, grudge, or some ulterior motive. 17 R. C. L. 323; White v. Nicholls, supra, 3 How. 266, 286, 11 L. Ed. 591; Rigney v. Keesee & Co., 104 W. Va. 168, 139 S. E. 650, 651, 54 A. L. R. 1139. In the case last cited the Supreme Court of Appeals of West Virginia thus states the rule, quoting with approval from Hansen v. Hansen, 126 Minn. 426, 427, 148 N. W. 457, L. R. A. 1915A, 104: "The communication being privileged, the burden is cast upon plaintiff to show malice in fact; that is, that the defendant was actuated by ill will or improper motive, or that he acted causelessly and wantonly, to the injury of the plaintiff. When made on a privileged occasion, the law does not imply malice from the communication itself nor from its falsity, as in the ordinary case of libel."

As heretofore stated, there is nothing in the evidence which would justify a finding by the jury that Niehaus was actuated by malice or ill will against the plaintiffs, or that he acted from any ulterior motive whatever. The uncontradicted evidence is that shortly before the occurrence he had raised the wages of Mrs. Watson, and that he had retained Jamison in the service of the company notwithstanding circumstances that might have justified his dismissal. While the profane language, if he used it, was ungentlemanly and unbecoming, we do not think that its use would in itself justify the jury in finding that in making the accusations he was actuated by malice. It indicates rather that he was angry because of the thought that those whom he had trusted had abused his confidence.

Language used in making an accusation may under some circumstances be sufficient of itself to carry the case to the jury on the issue of express malice, as where it is altogether disproportionate to the occasion. Newell on Libel and Slander (4th Ed.) § 292; White v. Nicholls, supra; Riley v. Stone, 174 N. C. 588, 94 S. E. 434; Farley v. Thalhimer, 103 Va. 504, 49 S. E. 644. But to be sufficient for such purpose it must of itself have a reasonable tendency to prove that the false accusation proceeds from the ill will or ulterior motive which is the essence of malice, not merely that the person making it is angry because he believes it to be true. The fact that it shows anger or that it is intemperate is not enough. "Malice implies an intention to do ulterior and unjustifiable harm." Street, Foundations of Legal Liability, vol. 1, p. 314; Newell, § 292; Odgers, Libel and Slander, § 345; Massee v. Williams (C. C. A. 6th) 207 F. 222, 230; Strode v. Clement, 90 Va. 553, 559, 19 S. E. 177, 179.

Where the language is of such a character that the jury would be justified in inferring malice from its use, the question of the existence of malice is, of course, one for their determination; but, where such inference cannot reasonably be drawn, or where the language and the circumstances attending its publication are as consistent with the nonexistence of malice as with its existence, the court should direct a verdict for defendant. National Disabled Soldiers' League v. Haan, 55 App. D. C. 243, 4 F.(2d) 436. When the language here under consideration is viewed in the light of the attendant circumstances, the jury would not have been justified in finding that its use proceeded from malice or ulterior motive on the part of Niehaus. The court should, therefore, have directed a verdict for the defendant. See Southern Ice Co. v. Black, 136 Tenn. 391, 189 S. W. 861, 862, Ann. Cas. 1917E, 695, where the foreman of defendant called plaintiff a "d—— liar and a d—— thief" in charging him with dishonesty, and McKenzie v. Burns, 149 Minn. 311, 183 N. W. 516, 517, where the language used was that plaintiff was a "d—— thief."

Nor do we think that plaintiffs are entitled to recover by reason of the provisions of the "Insulting Words" statute of West Virginia, upon which they rely. That statute, being Code 1931, c. 55, art. 7, § 2 (Barnes W. Va. Code of 1923, c. 103, § 2), provides: "*Insulting Words.*—All words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon."

There is nothing in this statute which abolishes the common-law defense of privilege or modifies the rules with respect to proof of malice. In W. T. Grant Co. v. Owens, 149 Va. 906, 141 S. E. 860, 863, the Special Court of Appeals of Virginia, after reviewing the decided cases, says of the Virginia statute from which the West Virginia statute in question was taken: "Looking at the Virginia cases involving actions under the statute in

question, we find that all of them, since the statute was amended in 1849, have treated an action for insulting words entirely as an action for libel or slander, for words actionable per se, with two exceptions: 'No demurrer shall preclude a jury from passing thereon,' and no publication of the words is necessary. In all other respects an action under the statute is placed on all fours with an action for defamation at common law. The rules of evidence are the same, as are also questions in regard to privilege, and inferred malice and actual malice, and in regard to the character and measure of damages. The truth may also be pleaded under the statute (section 6240 of the Code) allowing this to be done 'in any action for defamation of character.' In fact, the trial of an action for insulting words is completely assimilated to the common-law action for libel or slander, and from the standpoint of the Virginia law is an action for libel or slander."

In Chaffin v. Lynch, 84 Va. 884, 6 S. E. 474, 476, the Supreme Court of Appeals of Virginia, speaking through Judge Lewis, after adverting to the rule respecting privileged communications laid down by Baron Alderson in Todd v. Hawkins, 8 Car. & P. 88, 34 E. C. L. 624, and by Baron Parke in Toogood v. Spyring, 1 Cromp. M. & R. 181, said: "The adjudged cases to the same effect are almost without number, and they settle the law upon the subject beyond the possibility of a doubt, not only as to libel or slander at common law, but equally as to insults under the statute. For, as was said when the case was first before us, the effect of the statute, as it now is, since it has been amended, is simply to make a certain class of words actionable, and as to which no demurrer shall preclude the jury from passing thereon. It enacts as follows: 'All words which, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon.' Code 1873, c. 145, § 2. Hence, there being nothing in the statute to the contrary, a communication which would be privileged at common law is, if made under similar circumstances, privileged in an action, under the statute, for insults."

The West Virginia cases are to the same effect; and it is well settled in that state that the common-law defense of privilege is available under the statute, and that, where the occasion is privileged, there must be proof of express malice before there can be a recovery. Alderson v. Kahle, 73 W. Va. 690, 80 S. E.

1109, 51 L. R. A. (N. S.) 1198, Ann. Cas. 1916E, 561; Siever v. Coffman, 80 W. Va. 420, 92 S. E. 669.

For the reasons stated, there was error in refusing to direct a verdict for defendant, and the judgments below will accordingly be reversed.

Reversed.