KROGER GROCERY & BAKING CO. v. YOUNT.

No. 9252.

Circuit Court of Appeals, Eighth Circuit.

July 26, 1933.

Rehearing Denied Sept. 7, 1933.

Walter H. Saunders, of St. Louis, Mo. (A. L. Anderson and Leahy, Saunders & Walther, all of St. Louis, Mo., on the brief), for appellant.

R. L. Ward, of Caruthersville, Mo. (J. Henry Caruthers, of St. Louis, Mo., Ward & Reeves, of Caruthersville, Mo., and Curlee, Nortoni & Teasdale, of St. Louis, Mo., on the brief), for appellee.

Before STONE, KENYON, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case appellee recovered judgment against appellant in the sum of $5,000 as damages for slander. The parties will be referred to as they appeared below.

On February 16, 1929, and prior thereto, defendant was conducting a retail grocery business in St. Louis, Mo., under a system of self-service. Each store maintained by it was so arranged that after entering the store the customer came to a small lobby and then to an entrance turnstile, through which he passed, giving him access to the goods which defendant had exposed for sale, and from which the customer helped himself. He then came to another turnstile, through which he made his exit, and at which his purchases were checked over by a representative of defendant, the total price calculated, and the amount of the purchase price paid by the customer.

On the date in question plaintiff entered one of the stores of defendant in St. Louis, Mo., to purchase groceries. Prior to entering she had made various purchases of groceries at other stores, and she and her son, who accompanied her, were carrying these groceries; the son carrying all of the purchases except a package of Krispy Crackers, which plaintiff personally carried. These crackers were wrapped in oil paper just as they came from the factory. Defendant had in its store crackers of the same kind, packed in packages of exactly the same size and shape.

As the jury returned a verdict in favor of the plaintiff, it is necessary to consider the action of the court in denying defendant's motion for a directed verdict, interposed at the close of all the evidence. We shall consider the testimony produced by the plaintiff as true, giving her the advantage of such reasonable inferences as may arise therefrom.

Plaintiff and her son passed through the entering turnstile by the checker. Her son then went out, repassing the checker, going to the front of the store, where he left the packages which he had carried into the store on a bench. He then returned to his mother, and they selected some other articles, and the son then again stepped out into the front part of the store with the package of Krispy Crackers, which his mother had carried into the store and which had been purchased at Moll's store. She then got in line to pass the checker with the goods selected in defendant's store, but before she had reached the checker he called to some one in the back of the store who came forward, when there was a whispered conversation between the checker and the other employee whom he had called, and then this called employee went to the front of the store, where he kept watch of the son. Plaintiff paid the checker for the groceries she had selected in the store, and then went to her son and took the package of Krispy Crackers from him. At this time the checker, with the

manager of the store, rushed up to plaintiff and accosted her, saying, "You pay for this package before you take it out of here." The party doing the talking was the manager, whose name was Tony Ranchetto. He took the package of crackers out of plaintiff's hands. She replied: "I beg your pardon. I did not buy this package here." Ranchetto said: "Read the sign, 'No package goes out of here that is not wrapped.'" Plaintiff testified that she was excited and could not see the sign, and again said: "I did not buy the crackers here." Ranchetto then said: "What did that boy make the second trip behind the counter for? I never saw that boy in here before." Ranchetto again insisted that plaintiff pay for the crackers, and while she protested that she had gotten them at Moll's, Ranchetto said: "That is what a woman said in here yesterday and tried to get away with it." Plaintiff also testified that Ranchetto said she would have to call the manager on the telephone or pay for the crackers before she took them out. Plaintiff then said: "Well, what do you want me to pay you?" Ranchetto replied, "Twelve cents." This conversation was heard by other employees and other customers in the store. Plaintiff gave Ranchetto 12 cents, then changing her mind, asked for the return of her money, and left the crackers with Ranchetto.

Plaintiff then went to Moll's store, and some thirty minutes later returned with the clerk of that store who had sold her the crackers, and then another conversation occurred between plaintiff and Ranchetto. This conversation was admitted in evidence over the objection of defendant. It is not claimed that it was an independent slander, but that it was an admission of the manager that he had charged plaintiff with having stolen the crackers. The details of this conversation need not be here given, as they will be referred to later.

There was a sign conspicuously hung in the store, which read: "Leave your parcels with checker, for he is instructed to charge for each and every item passing the checking counter," but plaintiff testified that she had not observed this sign.

By its motion for a directed verdict at the close of all the evidence, and requests for certain instructions, which were refused, defendant has saved for review on this appeal the following questions: (1) The verdict is not sustained by substantial evidence because (a) the communication was conditionally or qualifiedly privileged, and (b) malice, actual or express, was neither pleaded nor proved by plaintiff; (2) the evidence of what was said between plaintiff and Ranchetto after plaintiff's return to the store was improperly admitted; (3) the verdict was so excessive in amount that the judgment should be reversed because of its excessiveness.

Plaintiff raises some other questions, but the foregoing are controlling.

■ It is important to consider whether or not the statements made by Ranchetto were, as claimed by defendant, qualifiedly privileged. If they were, then they are relieved of the presumption of malice, and to entitle plaintiff to recover it would be necessary to produce proof from which the jury might properly have found them to be malicious. A communication made in good faith by any person in the discharge of his duty, either legal or moral, is qualifiedly privileged and actionable only on proof of actual malice. Western Union Telegraph Co. v. Brown (C. C. A. 8) 294 F. 167, 169; Stroud v. Harris (C. C. A. 8) 5 F.(2d) 25; Wise v. Brotherhood of Locomotive Firemen, etc. (C. C. A. 8) 252 F. 961; Montgomery Ward & Co. v. Watson (C. C. A. 4) 55 F.(2d) 184, 187; New York & Porto Rico S. S. Co. v. Garcia (C. C. A. 1) 16 F.(2d) 734, 738; White v. Nicholls, 3 How. 266, 11 L. Ed. 591; Finley v. Steele, 159 Mo. 299, 60 S. W. 108, 52 L. R. A. 852; Holmes v. Royal Fraternal Union, 222 Mo. 556, 121 S. W. 100, 26 L. R. A. (N. S.) 1080; Peak v. Taubman, 251 Mo. 390, 158 S. W. 656; State v. Reynolds, 276 Mo. 688, 209 S. W. 100; Garey v. Jackson, 197 Mo. App. 217, 193 S. W. 920; Butler v. Freyman, 216 Mo. App. 636, 260 S. W. 523, 526.

In Western Union Telegraph Co. v. Brown, supra, this court in an opinion by the late Judge Sanborn, in discussing the question of absolute and qualified privilege, said: "The communications are few that are thus absolutely privileged and the telegram under consideration is not of that class. It falls in that much larger class of libelous and slanderous communications to which a qualified privilege extends in cases where the communication is written, spoken, or published by the defendant in good faith in the discharge of some public or private duty, legal or moral, for the sole purpose of discharging that duty. In cases of this class, although the communication is libelous on its face, the time, occasion, and circumstances of its writing and publication may be such as to rebut and neutralize the existence of that malice presumed from its terms alone, and, if the defendant wrote or published it in good faith, it may be privileged."

In Montgomery Ward & Co. v. Watson, supra, the Circuit Court of Appeals of the Fourth Circuit considered a case in which the manager of the defendant company made an investigation for the purpose of ascertaining whether certain employees were taking goods from the store. In holding that communications made by the manager in the course of the investigation were privileged, the court said: "Here it was the duty of Niehaus as local manager of defendant's business to investigate any charge of dishonesty among its employees. He had received information tending to show that plaintiffs were guilty of dishonest conduct; and it was proper that he communicate to them the basis of his suspicions. The right to the enjoyment of the good reputation to which one is entitled should be jealously guarded by the courts, but the protection of this right does not require that an employer be unduly limited or circumscribed in making a bona fide investigation of alleged dishonesty or other misconduct among his employees. It is in the interest of good morals as well as of sound business that such investigations be conducted; and an employer should not be penalized for communications made to his employees supposed to have knowledge of such matters, where they are made in good faith and for the honest purpose of discovering the truth or of protecting the business."

In the case of Butler v. Freyman, supra, a customer of a ladies' hat store went into the store to purchase a hat, and while there trying on hats thought of an engagement she had made, and walked out of the store with one of the hats on her head. The manager of the store made complaint that the customer had stolen the hat. In holding that the facts would not support an action of slander because every person has a right to make inquiry and investigation in an effort to develop the facts with reference to suspected crime, the court said: "The general rule is that communications which otherwise would be slanderous are privileged if made in good faith by one in the prosecution of an inquiry regarding a crime which he believes to have been committed against him."

[3] In the instant case it was the duty of Ranchetto, as manager of the store of defendant, to prevent customers from taking articles of merchandise without paying for them. We must view the situation as it appeared to him at the time of making the statements complained of, and not in the light of later developments. As has been observed, there was conspicuously posted in the store, so that every one entering might read it, a sign or warning advising that all who enter must leave their parcels with the checker, "for he is instructed to charge for each and every item passing the checking counter." The plaintiff should, therefore, on entering the store, have deposited the articles which she then had with the checker. This would seem to be a very reasonable regulation. This she did not do, but she, through her son, sent out this package of crackers. This was observed by the checker, and Ranchetto was advised of the suspicious, if not incriminating, circumstances. The package of crackers had no wrapping paper on it to indicate that it came from any other store, and it was identical with packages which defendant had in its store, to which plaintiff had access. Ranchetto was warranted in assuming that plaintiff knew of this posted instruction or rule. It had apparently been surreptitiously evaded, and it was under these circumstances that he made the statements complained of. Regardless of the posted notice or rule, Ranchetto would have had the right and duty to make an investigation in a reasonable manner, and while the rule could not make a slander lawful, it is important as a circumstance in considering the action of Ranchetto. Even without this notice or rule, of course, plaintiff could have had no right to remove defendant's property from its store without paying for it.

It seems clear that the communication was qualifiedly privileged. But even a qualified privilege may be defeated by its abuse, and it is urged that there was an excessive publication in the instant case. The mere casual presence of bystanders who may hear the communication does not rob the occasion of the protection of the privilege. Montgomery Ward & Co. v. Watson, supra; New York & Porto Rico, S. S. Co. v. Garcia, supra. In the last-cited case the court said: " * * * The mere fact that third persons not legally interested in the communication are accidentally present and hear it, will not alone take the case out of the privilege if it were unavoidable or happened in the usual course of business affairs."

The presence of other employees or other customers in the store, who may have overheard the conversation, is not sufficient to defeat the privileged character. The communication and investigation had to be made then and there in the due course of the performance of Ranchetto's duty, or not at all.

Having concluded that the communication was qualifiedly privileged, it is necessary

to consider whether there was substantial evidence warranting a finding of malice. Under some circumstances it has been held that the language used was itself sufficient to carry to the jury the issue of express malice, as where it is out of all proportion to the occasion; but, as said by the Circuit Court of Appeals of the Sixth Circuit in Massee v. Williams, 207 F. 222, 230, "Honest indignation and want of sound judgment on the part of the defendant and his employment of strong words, if he thought them justified, were not evidence of malice."

In Montgomery Ward & Co. v. Watson, supra, the court said: "Where the language is of such a character that the jury would be justified in inferring malice from its use, the question of the existence of malice is, of course, one for their determination; but, where such inference cannot reasonably be drawn, or where the language and the circumstances attending its publication are as consistent with the nonexistence of malice as with its existence, the court should direct a verdict for defendant."

The language used by Ranchetto, according to plaintiff's own testimony, was certainly as consistent with the nonexistence of malice as with its existence, so that it was necessary that plaintiff produce proof of malice.

▮▮ Ordinarily, actual or express malice may be shown by evidence of previous ill will, hostility, threats, rivalry, former libels or slanders, and other circumstances or actions emanating from the defendant. The burden of proof on this issue was upon the plaintiff. There is no evidence to show that Ranchetto had any motive of ill will, spite, or any grudge against plaintiff which could have induced or caused him to make the remarks complained of. He was not acquainted with the plaintiff, and the evidence is convincing that he made the statements complained of in the due performance of his business and because he felt it was his duty so to do. Under these circumstances, the question of malice was one for the court.

In Western Union Telegraph Company v. Brown, supra, the telegraph company was induced by representations that the senders of the telegram were agents of the federal government to accept a libelous telegram. This court held that there was no evidence of bad faith or lack of ordinary care in receiving and sending the telegram, although the inquiry did not go beyond the persons who presented the telegram at the office, and that the evidence of good faith was so conclusive that a verdict of the jury that it was not good faith could not be sustained by the court.

Ranchetto could have had no reason to make the accusation which he made, except as it appeared to him to be his duty so to do in the interest of his employer. Plaintiff, as has been observed, created the appearance of attempting to purloin this package of crackers. It was exactly the same in appearance as packages sold by defendant. The son of plaintiff had already passed out of the part of the store where the goods were kept, to deposit some articles on the bench. On the second trip he carried the ill-fated crackers with him, and put them with the other articles. The evidence falls far short of sustaining a finding that Ranchetto acted in bad faith.

Plaintiff insists, however, that the answer of the defendant did not sufficiently plead the privilege. This deserves only passing notice, because it was essential to plaintiff's recovery that she plead and prove express or actual malice, in order to recover. Defendant's motion to direct a verdict should have been granted.

▮▮ As a new trial must be ordered, it is necessary to consider the assignment which challenges the action of the court in admitting plaintiff's testimony that after leaving the store of defendant she went to Moll's store and there found the clerk who sold her the crackers, and that she, the clerk, and her son returned to defendant's store, where she had a further conversation with Ranchetto. Plaintiff and other witnesses were permitted to testify to this conversation which took place some thirty minutes after the statements which are alleged to be slanderous were made. This testimony in substance showed that plaintiff pointed to the clerk from Moll's store, and said that he was the man who sold her the crackers; that Ranchetto asked why he had not wrapped the package, and the clerk said he did not have to wrap the crackers, that they were already wrapped in wax paper and they were not required to wrap the crackers. Ranchetto then said, "How can you tell people are not stealing your stuff if you do not wrap them?" To which the clerk replied, "We keep our goods behind the counter." Plaintiff then said: "Oh, I told you the truth, I told you the truth. I couldn't make you believe that I didn't steal your crackers." Ranchetto did not make any statement or any denial that he had accused plaintiff of stealing the crackers.

The only possible theory upon which this testimony could be said to be admissible is

that it might be admitted to show the animus with which the original remarks were made. As already observed, however, the original remarks were qualifiedly privileged. There was no evidence of malice or bad faith, and hence they were not slanderous. These subsequent remarks were clearly not sufficient to give to the original remarks any slanderous meaning.

It would seem to be unnecessary to consider the question that the judgment should be reversed because the verdict is excessive. This is a question addressed to the discretion of the trial court, and this court is without authority to review the amount of the verdict in a tort action. Chicago, M. & St. P. R. Co. v. Heil (C. C. A. 8) 154 F. 626; Interstate Stage Lines Co. v. Ayers (C. C. A. 8) 42 F.(2d) 611; Sun Oil Co. v. Rhodes (C. C. A. 8) 15 F.(2d) 790; Public Utilities Corp. v. McNaughton (C. C. A. 8) 39 F.(2d) 7; Harris Trust & Savings Bank v. Earl (C. C. A. 8) 26 F.(2d) 617; Southern R. Co. v. Walters (C. C. A. 8) 47 F.(2d) 3; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 47 S. Ct. 400, 71 L. Ed. 684; New York C. & H. R. R. Co. v. Fraloff, 100 U. S. 24, 25 L. Ed. 531; Arkansas Valley Land & Cattle Co. v. Mann, 130 U. S. 69, 9 S. Ct. 458, 32 L. Ed. 854; Kennon v. Gilmer, 131 U. S. 22, 9 S. Ct. 696, 33 L. Ed. 110; New York, L. E. & W. R. Co. v. Winter, 143 U. S. 60, 12 S. Ct. 356, 36 L. Ed. 71; Herencia v. Guzman, 219 U. S. 44, 31 S. Ct. 135, 55 L. Ed. 81; Southern Ry.-Carolina Division v. Bennett, 233 U. S. 80, 34 S. Ct. 566, 58 L. Ed. 860; St. Louis, I. M. & S. R. Co. v. Craft, 237 U. S. 648, 35 S. Ct. 704, 59 L. Ed. 1160.

It follows that the judgment appealed from should be reversed and the cause remanded, with directions to grant defendant a new trial, and it is so ordered.